RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3269-14T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

v.

K.A.H.,

 Defendant-Appellant.
_________________________________________

IN THE MATTER OF THE GUARDIANSHIP OF
S.M.-N.H. and S.K.U.C.,

 Minors.
__________________________________________

 Argued May 23, 2017 – Decided June 1, 2017

 Before Judges Yannotti, Fasciale and
 Sapp-Peterson.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Essex County,
 Docket No. FG-07-0131-13.

 Anastasia P. Winslow, Designated Counsel,
 argued the cause for appellant (Joseph E.
 Krakora, Public Defender, attorney; Ms.
 Winslow, on the briefs).
 Joseph Maccarone, Deputy Attorney General,
 argued the cause for respondent (Christopher
 S. Porrino, Attorney General, attorney; Andrea
 M. Silkowitz, Assistant Attorney General, of
 counsel; Mr. Maccarone, on the brief).

 Olivia Belfatto Crisp, Assistant Deputy Public
 Defender, argued the cause for minors (Joseph
 E. Krakora, Public Defender, Law Guardian,
 attorney; Ms. Belfatto Crisp, on the brief).

PER CURIAM

 K.A.H. appeals from an order of the Family Part dated March

3, 2015, which terminated her parental rights to two minor

children, S.M.-N.H. (Sarah) and S.K.U.C. (Sydney).1 K.A.H. also

appeals from an order dated August 12, 2014, which suspended

visitation, and an order dated May 11, 2015, which dismissed this

guardianship action. We affirm.

 I.

 This appeal arises from the following facts. K.A.H. was born

in September 1990, and thereafter placed in the custody of the

Division of Child Protection and Permanency (Division) because

K.A.H.'s mother left her with her maternal aunt, Ms. S. K.A.H. was

later placed in a group home, but she left the home without

permission. The Division again placed K.A.H. with Ms. S. and

provided financial assistance. In August 2006, K.A.H. gave birth

1
 In this opinion, we use initials to identify certain persons,
and fictitious names for the children, in order to protect their
privacy.

 2 A-3269-14T3
to Sarah. K.A.H. and Sarah remained with Ms. S. until December 31,

2006, when K.A.H. left the home with the child.

 Ms. S. informed the Division that she did not know where

K.A.H. and Sarah were, but the Division located them and removed

them from Ms. S.'s home. The Division placed K.A.H. and Sarah in

separate resource homes, and provided K.A.H. with weekly,

supervised visitation. In April 2007, K.A.H. ran away from her

resource home and left the child behind. At the time, K.A.H. was

pregnant.

 In June 2007, the Division placed K.A.H. at Isaiah House, a

residential program for women, children, and adolescents. The

Division also provided K.A.H. with various services. In October

2007, K.A.H. gave birth to a boy, Sydney. K.A.H. and Sydney were

placed in a resource home, and Sarah remained in a separate

resource home. Thereafter, K.A.H. began therapy at Family

Connections. In December 2007, the Division ruled out Ms. S. as a

placement.

 In January 2008, the trial court determined that K.A.H. would

not be able to meet Sydney's basic needs without the Division's

intervention. In February 2008, K.A.H. left the resource home with

Sydney. In the months that followed, K.A.H. tested positive twice

for marijuana, and in July 2008, she terminated her therapy at

 3 A-3269-14T3
Family Connections. Several months later, K.A.H.'s resource parent

informed the Division that K.A.H. smelled of alcohol.

 In January 2009, the Division removed Sarah from Ms. S.'s

home and placed her in a resource home with K.A.H. and Sydney. In

April 2009, after an argument with her resource parent, K.A.H.

took the children and left the home. They returned the following

day, but the resource parent asked the Division to remove them.

The Division then placed K.A.H. with her sister, and returned the

children to the resource home. In August 2009, the resource parent

expressed an interest in adopting Sarah, but she was not committed

to adopting Sydney because of certain behavioral problems.

 In August 2009, the trial court approved the Division's

permanency plan for termination of K.A.H.'s parental rights

because she had not complied with any of the services provided to

assist her in becoming a functioning parent. The following month,

K.A.H. advised the Division that she was planning to move with her

sister to Pennsylvania. She asked the Division to refer her for

services in that state. In October 2009, K.A.H. visited Sarah and

Sydney. She had not seen them since May 2009.

 The Division arranged additional visits and provided

additional services to K.A.H. In December 2009, K.A.H.

participated in a drug and alcohol evaluation at Catholic

Charities. K.A.H. reported using marijuana twenty-five days that

 4 A-3269-14T3
month. K.A.H. also reported that she had been drinking alcohol.

The Division referred K.A.H. for substance abuse treatment. She

tested positive for marijuana in February, August, and October

2010.

 In March 2010, K.A.H. relocated to Pennsylvania. The Division

terminated her substance abuse treatment in New Jersey, but

continued to arrange for K.A.H. to visit the children each month.

In October and November 2010, the Division located services for

K.A.H. in Pennsylvania. The services included parenting skills

classes, individual therapy, and substance abuse counseling.

K.A.H. did not, however, participate in the services.

 In December 2010, the Division again placed the children with

Ms. S. In January 2011, K.A.H. surrendered her parental rights to

Sarah and Sydney so that Ms. S. could adopt them. Sarah's

biological father also executed an identified surrender of his

parental rights. In addition, the court terminated the parental

rights of Sydney's biological father following a default and proof

hearing.

 Thereafter, Ms. S. was arrested as a result of a domestic-

violence incident. In April 2011, the Division removed the children

from her care and placed them in a new resource home. Several

months later, the new resource parent reported that the children

 5 A-3269-14T3
were "tearing up her home." The resource parent said that Sydney

was difficult to manage and he had become violent with Sarah.

 In July 2011, the court granted the Division's motion and

vacated the judgment of guardianship entered previously. At that

time, Ms. S. expressed a desire to regain custody of the children,

and the Division referred her for therapy. In August 2011, K.A.H.

gave birth to a third child.

 The Division then had concurrent goals: reunification or

termination of K.A.H.'s parental rights. The Division informed

K.A.H. that if she wanted to be reunited with Sarah and Sydney,

she would have to comply with the recommended services. From

October to December 2011, the Division reached out to K.A.H. to

arrange for services in Pennsylvania, but she did not contact the

Division.

 In November 2011, the Division removed Sarah and Sydney from

the resource home and placed them in another resource home. The

following month, the resource parent asked the Division to remove

Sydney because he had engaged in inappropriate behavior. Sarah and

Sydney were later moved to a new resource home. In December 2011,

the Division ruled out Ms. S. as a possible caretaker because she

had not completed therapy. The children were moved to separate

resource homes after they engaged in inappropriate sexual behavior

with each other.

 6 A-3269-14T3
 The Division continued to provide services to K.A.H., but she

did not visit the children between September 2011 and mid-February

2012. In March 2012, Ms. S. successfully appealed the Division's

decision ruling her out as a resource placement. The following

month, the Division moved Sydney to another resource home, while

Sarah's placement continued. The Division had psychological and

bonding evaluations performed. The Division's goal at this time

was reunification. The Division informed K.A.H. she would have to

complete services within six months.

 In May 2012, Sarah's resource parent asked the Division to

remove Sarah from her home and the Division placed her in another

resource home. In August 2012, K.A.H. informed the Division she

was no longer interested in reunification, and she named T.L. as

a possible relative placement for Sarah and Sydney. Thereafter,

K.A.H. did not maintain regular contact with the children. In

December 2012, Sarah's resource parent reported that Sarah had

been hitting her, and she requested that the Division remove Sarah

from her home. In February 2013, the Division placed Sarah in

another resource home.

 In January 2013, the court approved the Division's permanency

plan for termination of K.A.H.'s parental rights, and in March

2013, the Division filed its guardianship complaint. On August 11,

2014, the court entered an order requiring the Division to provide

 7 A-3269-14T3
K.A.H. with visitation; however, on August 12, 2014, the court

suspended visitation.

 In January and February 2015, the court conducted a trial on

the Division's guardianship complaint. At the trial, the Division

presented testimony from its caseworkers and expert witness, Dr.

Mark Singer. K.A.H. and the Law Guardian did not call any

witnesses.

 On March 3, 2015, the court filed a written opinion finding

that the Division had established the statutory criteria for

terminating K.A.H.'s parental rights with clear and convincing

evidence. The court entered an order dated March 3, 2015,

terminating K.A.H.'s parental rights to the children. K.A.H.

thereafter filed a notice of appeal.

 After the trial court entered its order terminating K.A.H.'s

parental rights, the court conducted further hearings on

visitation and the Division's efforts to license Ms. S.'s home.

The court ordered the Division to provide it with documents from

the children's therapists with their views on whether the children

should have a final visit with K.A.H., and how such a visit would

proceed.

 On May 11, 2015, the court dismissed the guardianship action,

but allowed the matter to continue under the Family Part's child-

in-placement docket. Thereafter, K.A.H. filed a motion in this

 8 A-3269-14T3
court to supplement and clarify the record, and to amend the notice

of appeal to include additional orders.

 We granted the motion to amend the notice of appeal as to the

order of August 12, 2014, which suspended visitation, and the May

11, 2015 order, which dismissed the guardianship action. We also

remanded the matter to the trial court, which thereafter entered

an order clarifying the evidence that it relied upon in reaching

its decision. K.A.H. filed an amended notice of appeal on September

18, 2015.

 On appeal, K.A.H. argues that: (1) the Division failed to

establish by clear and convincing evidence the statutory criteria

for terminating parental rights; (2) the court erred by suspending

visitation, which unduly prejudiced her at the guardianship trial;

(3) the court erred by dismissing the guardianship action without

addressing all of the issues raised; and (4) she was denied her

constitutional right to effective assistance of counsel.

 II.

 We turn first to K.A.H.'s argument that the Division failed

to establish all of the statutory criteria for termination of her

parental rights to Sarah and Sydney.

 We note initially that parents have a fundamental

constitutional right to raise their children. N.J. Div. of Youth

& Family Servs. v. F.M., 211 N.J. 420, 447 (2012). That right is

 9 A-3269-14T3
not, however, absolute and is "tempered by the State's parens

patriae responsibility to protect children whose vulnerable lives

or psychological well-being may have been harmed or may be

seriously endangered by a neglectful or abusive parent." Ibid.

 "The focus of a termination-of-parental-rights hearing is the

best interests of the child." Ibid. The statutory best-interests

of-the-child standard, which is set forth in N.J.S.A. 30:4C-

15.1(a), "aims to achieve the appropriate balance between parental

rights and the State's parens patriae responsibility." N.J. Div.

of Youth & Family Servs. v. M.M., 189 N.J. 261, 280 (2007).

 The Division must prove the four statutory factors by clear

and convincing evidence. N.J.S.A. 30:4C-15.1(a); see M.M., supra,

189 N.J. at 280. The factors are not "discrete and separate" but

"relate to and overlap with one another to provide a comprehensive

standard that identifies a child's best interests." In re

Guardianship of K.H.O., 161 N.J. 337, 348 (1999).

 The scope of our review of a trial court's decision to

terminate parental rights is limited. N.J. Div. of Youth & Family

Servs. v. G.L., 191 N.J. 596, 605 (2007). "Appellate courts must

defer to a trial judge's findings of fact if supported by adequate,

substantial, and credible evidence in the record." Ibid.

 A. Prong One

 Prong one of the statutory test requires the Division to

 10 A-3269-14T3
establish that the "child's safety, health or development has been

or will continue to be endangered by the parental relationship[.]"

N.J.S.A. 30:4C-15.1(a)(1). The trial court found that the Division

had established this prong with clear and convincing evidence.

 The court stated that since they were born, Sarah and Sydney's

relationships with K.A.H. have been marked by instability. The

court noted that K.A.H. shirked her parenting responsibilities and

failed to comply with the services the Division had provided. As

a result, the children had numerous placements and were separated

from their mother.

 The court found that this lack of permanency put the children

at substantial risk of harm. The court accepted Dr. Singer's

testimony that this lack of permanency had a negative impact on

the children. The court stated:

 Dr. Singer testified that without permanency,
 children develop lower self-esteem[], have
 increased educational issues and problems with
 interpersonal relationships. He further found
 that multiple placements and separations from
 their mother for so long has resulted in
 maladaptive behaviors. . . . [K.A.H.] has had
 nearly eight years to rectify the issues that
 caused her children to be removed from her
 care and provide them with stability, but her
 unwillingness to comply with services and
 Division recommendations has prevented their
 return.

 The court also found that Dr. Singer had credibly and

persuasively testified that K.A.H.'s decision to move to

 11 A-3269-14T3
Pennsylvania had disrupted her relationships with the children.

The court noted that Dr. Singer found that this led to a decrease

in her contact with the children, and ultimately the children did

not view K.A.H. as a consistent physical presence in their lives.

The court found that by voluntarily removing herself from this

State, K.A.H. had "created a situation where it became increasingly

difficult [for her] to visit and decreased the amount of quality

time that she [could] spend with her children."

 The court also accepted Dr. Singer's opinion that K.A.H.'s

continued use of marijuana, despite previous drug treatment,

suggested substance-abuse dependency. In addition, the court found

that K.A.H.'s repeated non-compliance with services placed the

children at a substantial risk of harm. The court found that

K.A.H.'s refusal to participate in services was "indicative of

[K.A.H.'s] inability to comprehend the seriousness of the issues

that [stood] between her and reunification with the children." The

court further found that by refusing to comply with the services

provided, K.A.H had "effectively prevented reunification and

prolonged the harm to the children."

 On appeal, K.A.H. does not dispute the court's findings, but

nevertheless argues that she did not harm the children. She asserts

that her separation from the children was not the result of any

 12 A-3269-14T3
abuse or neglect on her part, but rather the Division's unilateral

actions. We disagree.

 We are convinced that there is substantial credible evidence

in the record to support the trial court's findings. As the court

found, the evidence established that K.A.H. harmed Sarah and Sydney

with her inconsistency and failure to do what was necessary to

regain custody of them. As a result, the children have been in

foster care for most of their lives. This lack of permanency put

the children at substantial risk of harm. We conclude that the

Division presented clear and convincing evidence showing that the

children's safety, health, or development has been endangered by

their parental relationships with K.A.H.

 B. Prong Two

 Prong two of the statutory test requires the Division to

prove that the "parent is unwilling or unable to eliminate the

harm facing the child or is unable or unwilling to provide a safe

and stable home for the child and the delay of permanent placement

will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). "The second

prong of the statutory standard relates to parental unfitness."

K.H.O., supra, 161 N.J. at 352.

 Parental unfitness may be established in two alternative

ways. Ibid. First, the Division may demonstrate that the parent

is "'unwilling or unable to eliminate the harm' that has endangered

 13 A-3269-14T3
the child's health and development." Ibid. (quoting N.J.S.A.

30:4C–15.1(a)(2)). Second, the Division may show that the parent

"failed to provide a 'safe and stable home for the child' and a

'delay in permanent placement' will further harm the child." Ibid.

(quoting N.J.S.A. 30:4C–15.1(a)(2)).

 In this case, the trial court found that K.A.H.'s refusal to

participate in or complete services showed that she is unable or

unwilling to remove the harm facing the children. The court noted

that K.A.H. had failed to comply with virtually every service

recommended for her, even though she knew that such compliance was

necessary for reunification with the children

 The court also noted that there were prolonged periods in

which K.A.H. did not visit the children. This contributed to the

ongoing harm. The court acknowledged that in August 2014, it had

suspended K.A.H.'s visits with the children. However, before the

court suspended visitation, K.A.H. had not seen the children for

more than a year. The court found that this showed K.A.H.'s

"general disinterest" in consistent visitation with the children,

which contributed to the ongoing harm.

 On appeal, K.A.H. argues that the trial court's findings are

not supported by the record. She asserts that her fitness to parent

Sarah and Sydney is shown by the fact that after she aged out of

the foster-care system, she adequately cared for her two young

 14 A-3269-14T3
children. She contends this demonstrates she was willing and able

to eliminate the initial threat of harm, specifically, her youth,

immaturity, and lack of resources. We are not persuaded by these

arguments.

 Here, Dr. Singer testified that although K.A.H. was caring

for her other children, this did not establish that she was capable

of adequately parenting Sarah and Sydney. Dr. Singer pointed out

that Sarah and Sydney are in a different position from their half-

siblings since K.A.H. had not been a consistent presence in their

lives. Moreover, both Sarah and Sydney have emotional and

behavioral issues. There is no evidence showing that K.A.H.'s

other children have such issues.

 We conclude that there is substantial credible evidence in

the record supporting the trial court's findings on prong two. The

record contains clear and convincing evidence showing that K.A.H.

was unwilling and unable to eliminate the harm facing Sarah and

Sydney, and a delay in permanent placement will cause further

harm.

 C. Prong Three

 Prong three of the statutory criteria requires the Division

to establish that it made "reasonable efforts to provide services

to help the parent correct the circumstances which led to the

child's placement outside the home and the court has considered

 15 A-3269-14T3
alternatives to termination of parental rights[.]" N.J.S.A. 30:4C-

15.1(a)(3). The determination of whether the Division made

reasonable efforts depends upon the circumstances of a particular

case. N.J. Div. of Youth & Family Servs. v. F.H., 389 N.J. Super.

576, 620 (App. Div.), certif. denied, 192 N.J. 68 (2007).

 Moreover, the reasonableness of the Division's efforts is not

measured by whether they were successful. In re Guardianship of

D.M.H., 161 N.J. 365, 393 (1999). Indeed, "even [the Division's]

best efforts may not be sufficient to salvage a parental

relationship." F.M., supra, 211 N.J. at 452.

 In its opinion, the trial court noted that the Division had

provided K.A.H. numerous opportunities to participate in services,

but she did not avail herself of these opportunities. The court

found that the Division made reasonable efforts toward

reunification and explored alternatives to termination of parental

rights.

 The court noted that at the time of the trial, the Division

was re-evaluating Ms. S., but placements with other relatives had

been ruled out. The court observed that at the time of the trial,

Sarah was residing in a home with foster parents who are willing

to adopt her, and Ms. S. has expressed an interest in adopting

Sydney if he becomes legally free and her home is deemed

appropriate.

 16 A-3269-14T3
 K.A.H. argues, however, that the court's analysis is not

supported by sufficient evidence. She contends the court's finding

that she did not comply with services is not based on the entire

record. She asserts that the services that the Division offered

to her were not tailored to her circumstances. K.A.H. further

argues that the court's conclusion that there were no alternatives

to termination of parental rights was clearly erroneous because

establishing a permanent placement with relatives, such as Ms. S.,

was an option from the inception of the case.

 These arguments are without sufficient merit to warrant

extended comment. R. 2:11-3(e)(1)(E). We note, however, that the

record shows that since 2006, the Division provided K.A.H. with

numerous services. K.A.H.'s claim that these services were not

tailored to her circumstances is not supported by the record. The

Division also considered alternatives to termination of parental

rights, and found that there were no such alternatives. We note

that because adoption is feasible and likely, kinship legal

guardianship was not an option. See N.J. Div. of Youth & Family

Servs. v. P.P., 180 N.J. 494, 512 (2004).

 D. Prong Four

 The fourth prong of the statutory standard requires the

Division to establish that "[t]ermination of parental rights will

not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). The focus

 17 A-3269-14T3
of the fourth prong is on the effect termination of parental rights

will have upon the child. G.L., supra, 191 N.J. at 609.

 Here, the trial court found that the Division had presented

clear and convincing evidence to establish prong four. The court

explained:

 In the present case, [Sarah] has bonded with
 her resource parents who have provided
 something that her biological parents cannot:
 a safe and stable home. . . .

 Dr. Singer testified that if [Sarah] were to
 be removed from her resource parents, she will
 likely experience loss that would result in
 "significant and enduring harm." Given
 [Sarah]'s previous diagnoses, Dr. Singer
 opined that "severing this relationship would
 further traumatize this child and would likely
 have significant implications regarding her
 short and long term emotional functioning."
 Dr. Singer further found that [Sarah] views
 her resource parents as her psychological
 parents, and have become her primary
 nurturers, the people that [Sarah] looks to
 for security. . . .

 . . . .

 Even conceding that at the last bonding
 evaluation, [Sydney] demonstrated some bond
 with [K.A.H.], the record is replete with
 evidence that demonstrates that [K.A.H.] is
 unfit to parent this child. [K.A.H.] has had
 eight years to remedy the issues that led to
 [Sydney] being placed out of her care.
 [K.A.H.]'s refusal to engage with the Division
 clearly supports the conclusion that
 terminating her parental rights will not do
 more harm than good for [Sydney].

 18 A-3269-14T3
 It is Dr. Singer's expert opinion . . . [that
 the evidence] supports [pursuing] termination
 of [K.A.H.'s] parental rights so that [Sydney]
 could be free to achieve the consistency and
 stability that comes with adoption. Plainly,
 Dr. Singer's prediction is that [Sydney's]
 behaviors will continue to worsen over time,
 without permanency and stability. He further
 asserts that [Sydney] cannot achieve
 permanency with [K.A.H.], due to her inability
 to parent. This [c]ourt agrees.

 On appeal, K.A.H. argues that the court erred because it did

not apply the balancing test required by K.H.O. She contends the

court should have considered and balanced the various

relationships, and determined whether the children would suffer a

greater harm from termination of her parental rights than from a

permanent disruption of their relationships with the foster

parents. K.H.O., supra, 161 N.J. at 363.

 We are not persuaded by K.A.H.'s arguments. The trial court's

finding that the Division established prong four is supported by

sufficient credible evidence in the record, including Dr. Singer's

testimony. Notwithstanding K.A.H.'s arguments to the contrary, the

trial court considered and balanced the various relationships

involved, and properly determined that termination of K.A.H.'s

parental rights to Sarah and Sydney will not do more harm than

good.

 III.

 Next, K.A.H. argues that the trial court erred by suspending

 19 A-3269-14T3
visitation, which she claims prejudiced her at the guardianship

trial. She contends that the court did not conduct the hearing at

which visitation was suspended with the requisite formalities to

support such a decision, and the court based its decision on

unreliable hearsay, specifically an email and letters from the

children's treating therapists.

 The record shows that on August 11, 2014, while K.A.H. was

in New Jersey to attend a funeral, she appeared for a hearing and

requested visitation with Sarah and Sydney. K.A.H. also requested

visitation in Pennsylvania and asked the court to order the

Division to transport Sarah and Sydney to Pennsylvania to

facilitate such visitation.

 The Division objected to the request, noting that the then-

current permanency plan was for termination of K.A.H.'s parental

rights, not reunification. The Division noted that K.A.H. had not

visited with the children in approximately one year. The court

permitted visitation while K.A.H. was in New Jersey, and the visit

was supposed to occur the next day. The court reserved its decision

on additional visitation in Pennsylvania pending the outcome of

the New Jersey visit.

 The following day, at the Division's request, the court

conducted an emergent hearing regarding K.A.H.'s visit with the

children. K.A.H. was represented by counsel, but it appears that

 20 A-3269-14T3
K.A.H. was not personally notified of the hearing. K.A.H.'s

attorney proceeded in her absence without objection.

 The Division opposed visitation, arguing that it would not

be in the best interests of the children and that it would be

harmful to them. In support of its application, the Division

presented an email and letters from the children's treating

therapists, who did not recommend visitation at that time. K.A.H.'s

counsel did not object to the court's consideration of the

therapists' statements.

 The court noted that K.A.H. had not been an active part of

the children's lives for "many, many years." The court also pointed

out that neither of the statements from the children's therapists

indicated that visitation should never happen, but rather that it

should not happen at this time. The court found that because there

was no "real possibility of reunification in this case as it stands

now, [visitation does not] make sense for these children at this

time."

 The court ordered the Division to have the children's

therapists speak with K.A.H. about the impact her visitation would

have on the children and her level of commitment to them. The

court stated that K.A.H.

 needs to make a commitment that no matter how
 we have to arrange it, at a certain time and
 a certain place and date, she's going to be

 21 A-3269-14T3
 there for the children and they're going to
 know she's there.

 So let's start by setting up something for her
 to visit with the clinicians and let's start
 it from that perspective. I'm certainly not
 trying to stop any mother from seeing their
 children if that's what she wants to do.

 Because K.A.H's attorney did not object to the admission of

the therapists' statements into evidence, we review the court's

consideration of the therapists' statements for plain error. We

conclude that the court's consideration of this evidence does not

rise to the level of plain error because it was not "clearly

capable of producing an unjust result." R. 2:10-2.

 The court did not err by suspending K.A.H.'s visitation, in

view of her failure to visit with the children for a substantial

period of time and the need for K.A.H. to demonstrate a commitment

to them. As noted, the court ordered K.A.H. to speak with Sarah

and Sydney's therapists to explore the possibility of future

visitation and to discuss her commitment to her children. The

record shows that K.A.H. did not do so.

 Furthermore, even if the court erred by suspending visitation

on August 12, 2014, it would not have affected the court's ultimate

disposition of the case. Indeed, she had previously failed to

maintain consistent visitation with the children. K.A.H.'s lack

of visitation from August 2014 until February 2015, was only one

 22 A-3269-14T3
of the factors the court considered in determining that K.A.H.'s

parental rights should be terminated.

 IV.

 K.A.H. argues that the trial court erred by dismissing the

litigation on May 11, 2015. She argues that the court left in

abeyance issues regarding visitation, the licensing of Ms. S.'s

home, Sydney's placement with Ms. S., and the adjudication of the

therapists' recommendations on the benefits of visitation. K.A.H.

argues that, by dismissing the action the court did not

"scrupulously safeguard" her "due process interests" and those of

the children. We disagree.

 The record shows the following. On March 3, 2015, after the

conclusion of the guardianship trial, the trial court issued a

written opinion, together with a final order, terminating K.A.H.'s

parental rights to Sarah and Sydney. The order scheduled a summary

hearing "under the open FC [child-in-placement] docket" on May 11,

2015, "to track the status of the adoption filing." On May 11,

2015, the court conducted that hearing and issued an order

dismissing the guardianship action. The court ordered that "the

matter will continue to be reviewed under the open FC dockets."

 K.A.H.'s arguments on this issue are without sufficient merit

to warrant discussion. R. 2:11-3(e)(1)(E). We add the following

comments.

 23 A-3269-14T3
 When the court entered its order terminating K.A.H.'s

parental rights and awarding guardianship of the children to the

Division, the order effectively concluded the guardianship

proceedings. The court appropriately determined that issues

regarding visitation, the licensing of Ms. S.'s home, and Sydney's

adoption could be addressed in the court's child-in-placement open

dockets. We reject K.A.H's contention that, by dismissing the

guardianship action, the court did not "scrupulously safeguard"

her right to due process.

 V.

 K.A.H. also argues that she was denied the effective

assistance of counsel in these proceedings. She contends that her

attorney failed to investigate the matter adequately. She argued

that her attorney did not argue controlling law on issues regarding

the children's placement with Ms. S. as an alternative to

termination of her parental rights.

 It is well established that when the Division seeks to

terminate a person's parental rights, the parent has the right to

the assistance of counsel. N.J. Div. of Youth & Family Servs. v.

B.R., 192 N.J. 301, 305-07 (2007). A party who claims he or she

has been denied the effective assistance of counsel in such a

proceeding must show that counsel's performance was objectively

deficient, and that counsel's deficient performance prejudiced the

 24 A-3269-14T3
defense. Id. at 307 (citing Strickland v. Washington, 466 U.S.

668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 697 (1984)).

 On appeal, K.A.H. argues that her trial attorney erred by

failing to meet with Ms. S., visit her home, or review her

licensing paperwork. She contends that after the Division ruled-

out Ms. S. as a placement, counsel did not file a motion in the

trial court or assist Ms. S. in challenging the rule-out decision.

She claims her attorney did not track the status of the appeal,

and did not inform the court that Ms. S. was successful in her

appeal.

 K.A.H. further claims that the Division had numerous

opportunities to place the children with Ms. S., rather than have

them subjected to multiple placements. She contends that there is

a reasonable probability that, if her attorney maintained contact

with Ms. S., investigated the January 2011 incident in which Ms.

S. was arrested as a result of a domestic-violence incident, and

tracked the status of her rule-out appeal, the result of the

proceeding would have been different.

 We cannot agree. Even if K.A.H.'s attorney had taken the

actions that K.A.H. asserts should have been taken, the result

here would not have been different because there was clear and

convincing evidence showing that the termination of K.A.H.'s

parental rights was in the children's best interests. As we have

 25 A-3269-14T3
explained, the evidence clearly and convincingly established that

the children had been harmed by their relationship with K.A.H.,

and she was unable or unwilling to eliminate that harm.

 It is undisputed that K.A.H. failed to complete virtually all

of the services necessary to regain custody of the children. As a

result, the children were subjected to multiple placements. The

lack of permanency caused the children to suffer further harm.

K.A.H. also failed to maintain consistent visitation. Dr. Singer

testified that termination of K.A.H.'s parental rights was

necessary so the children could be adopted and achieve the

permanency they require.

 We conclude that K.A.H. has not shown that if her attorney

had handled the matter differently, her parental rights would not

have been terminated. Therefore, she has not shown that she was

denied the effective assistance of counsel.

 Affirmed.

 26 A-3269-14T3