# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3886-18T2
               A-3888-18T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

J.E.T. and T.E.F.,

     Defendants-Appellants,

and

S.B.,[1]

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF S.A.F.,

     a Minor.

_____

---

[1] Although "S.B." was originally named as a co-defendant in the guardianship complaint, that individual was not part of the trial proceedings or the present appeal.

Submitted May 11, 2020 – Decided May 28, 2020

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0045-19.

Joseph E. Krakora, Public Defender, attorney for appellant J.E.T. (Robyn A. Veasey, Deputy Public Defender, of counsel; Lauren Derasmo, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant T.E.F. (Robyn A. Veasey, Deputy Public Defender, of counsel; Kimberly A. Burke, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Sue Arons, Assistant Attorney General, of counsel; Diane L. Scott, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Louise M. Cho, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

In this Title 30 guardianship case, J.E.T. ("the mother") and T.E.F. ("the father") each appeal the Family Part's April 24, 2019 decision terminating their respective parental rights to their son, S.A.F., after a two-day trial. We affirm,

substantially for the reasons expressed in Judge James R. Paganelli's comprehensive written post-trial opinion.

We incorporate by reference the facts and procedural history extensively detailed in the trial court's opinion. The following brief summary of certain matters will suffice.

The child was born in June 2017 and is now nearly three years old. Although the mother took the child into her family's home briefly after birth, he was removed for emergent safety reasons by the Division of Child Protection and Permanency ("the Division") in August 2019. Since that time, the child has been with resource parents who now want to adopt him.

Both parents have had a long history of unresolved issues with substance abuse, mental health, and housing instability. They have had domestic violence episodes with one another. After the father strangled the mother, she obtained a final restraining order against him. In related criminal proceedings, the father pled guilty to third-degree aggravated assault against the mother, and he was incarcerated from March 2018 to June 2018.

Both parents have been effectively homeless for some or most of the period since the child's birth. The mother has never been employed and the father is sporadically and informally employed. The father appears to have been

sober for several months leading up to trial, but both parents have repeatedly failed drug tests and admitted to substantial drug abuse problems resulting in significant consequences to their psychological and physical well-being. Neither parent has successfully completed any of the programs or resources offered by the Division for substance abuse, parenting skills, domestic violence counseling, or batterer's intervention.

Although visitation records show the mother and father had generally positive interactions with the child, the parents only sporadically attended scheduled visits. Bonding evaluations indicated the child has little relationship with either parent, but a strong attachment to his resource parents, with whom he has been living since he was roughly two months old. The resource parents, who have cared for the child since August 2017, are committed to adopting him, and Division records and testimony indicate they can provide a safe and stable home.

At trial, the Division presented expert testimony from a psychologist, Dr. Eric Kirschner, which the parents did not counter with another expert. The trial judge found Dr. Kirschner credible, describing his testimony as "thorough, detailed, and informative," and his evaluation "balanced and fair."

4

Among other things, Dr. Kirschner opined that neither parent is psychologically able to parent the child now or in the foreseeable future. Dr. Kirschner also found that the child's best interests are with remaining with the resource parents who wish to adopt him.

The judge also found the Division's testifying caseworker credible. The caseworker recounted the history that led to the Division's intervention, and the many services it had offered to each parent.

The father testified in his own defense, the mother did not testify, and neither parent called any other witnesses. The Law Guardian for the child, who supports termination, did not present any witnesses.

After sifting through the evidence, the trial judge concluded the Division had met its burden of proving all four prongs of the termination statute, N.J.S.A. 30:4C-15.1(a)(1) through (4), by clear and convincing evidence.

The present consolidated appeals by the parents ensued. Both parents challenge the sufficiency of the Division's proofs on all four statutory prongs. The father also argues his trial counsel was ineffective for failing to procure documentation from his probation officer showing he had been sober in the months leading up to the trial.

Our scope of review in this matter is limited by well-established principles. A reviewing court should not "disturb the family court's decision to terminate parental rights when there is substantial credible evidence in the record to support the court's findings." New Jersey Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008). The reviewing court must defer to the trial court's findings of fact "if supported by adequate, substantial, and credible evidence in the record." New Jersey Div. Of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007).

We also must recognize the considerable expertise of the Family Part, which repeatedly adjudicates cases brought by the Division under Title 9 and Title 30 involving the alleged abuse or neglect of children. See, e.g., N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012); N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 476 (App. Div. 2012). This limited scope of review is broadened "where the focus of the dispute is . . . alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom[.]" See N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014) (quoting In re J.T., 269 N.J. Super. 172, 188-89 (App. Div. 1993)). In such instances, a trial court's interpretations of the law

and subsequent legal consequences of the facts are afforded no special deference. See R.G., 217 N.J. at 552.

Viewed through this prism, we affirm the trial court's decision to terminate these defendants' parental rights. As we have noted, we do so for the cogent reasons extensively set forth in Judge Paganelli's written opinion. We add a few comments by way of amplification.

The record clearly supports the judge's findings on prongs one and two of the statutory criteria. N.J.S.A. 30:4C-15.1(a)(1) and (2). The evidence demonstrates that both parents have been unable to provide the child in the past with a safe and stable home, and that they are unlikely to remediate their parental deficiencies in the foreseeable future. Both parents have a lengthy history of mental health issues, drug abuse, and homelessness that provides little realistic hope they will become capable caretakers. As we will discuss, infra, the father's two negative urine screens preceding the trial are insufficient to offset those persisting concerns.

Turning to prong three, N.J.S.A. 30:4C-15.1(a)(3), we concur with the trial judge that the Division has offered both parents reasonable services, including programs and visitations. Unfortunately, neither parent took full advantage of those services. Although the Division delayed in providing

domestic violence counseling to the mother, that delay was inconsequential when considered in the fuller context of events. The father, meanwhile, was offered drug treatment and batterer's intervention services, which he declined to utilize, claiming scheduling problems. He also did not utilize other services that were offered to him. Again, the services offered to him were, on the whole, reasonable.

The trial judge also reasonably found under prong three that "the Division made every effort to assess all the individuals offered" for alternative placements. Those individuals were either ruled out after an evaluation revealed a criminal history, because they failed to respond or provide requested information, or because a suggested relative's contact information was never provided to the Division.

The mother argues the Division should have been more diligent in exploring a potential placement of her child with the maternal grandmother and great-grandmother. We are unpersuaded this alleged deficiency requires us to set aside the judge's decision.

The mother was not living with the maternal grandmother during the vast majority of this matter. The mother did provide the Division with an address associated with a home that great grandmother owned and where the maternal

grandmother had lived at the time of the child's birth. The mother had lived there with the child after he was released from the hospital. The record indicates that the caseworker duly went to that address in December 2018 to attempt to contact these relatives, and that no one was home. The caseworker sent follow-up letters and ultimately rule-out letters to that same address. There was no response.

The mother suggests the maternal grandmother may have moved from the home where the mother and the child originally resided after the child's birth. This is at odds with her contention that she has had a consistent and stable home with the maternal grandmother throughout this process.

The mother also argues that because the great grandmother was a former resource parent, the Division "clearly would have had a phone number for her." Even assuming the Division would maintain up-to-date contact information for former resource parents, the mother would clearly be in the best position to provide up to date contact information on her own possible relatives, but does not appear to have done so. See K.L.W., 419 N.J. Super. at 582 (holding that "a parent can[not] expect the Division to locate a relative with no information"). The Division reasonably attempted, in person and by mail, to reach both these relatives without success.

A-3886-18T2

Other alternatives, such as "long-term specialized care," were inappropriate and properly ruled out. The court considered Kinship Legal Guardianship ("KLG") and rightly determined it was inapplicable because the child's resource parents were willing and able to adopt. N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 512-13 (2004). We therefore affirm the judge's findings on prong three.

As to prong four, N.J.S.A. 30:4C-15.1(a)(4), there is abundant evidence in the record to support the judge's conclusion that termination would not do the child more harm than good. The court found, and the record reflects, that the child had developed a strong psychological attachment to his resource parents. The child had essentially no relationship with the mother. Although the father appears to have had some arguably meaningful interaction with the child, it was not nearly as significant as the bond the child felt to his resource parents.

We reject the mother's claim that the resource parents should have been rejected out of hand because of alleged cultural differences that lack any expert testimony. The court found Dr. Kirschner's testimony credible, and his testimony is sufficient to show termination will not do more harm than good under prong four.

Moreover, the child's strong interests in permanency warranted the chosen outcome so he can now be freed for adoption. See In re Guardianship of J.C., 129 N.J. 1, 26 (1992) (holding that "children have an overriding interest in stability and permanency" that weighs in favor of a resolution of their legal status).

Lastly, the father argues his trial counsel was ineffective for failing to produce clean drug tests from his probation demonstrating he had been sober for several months prior to trial. He argues his counsel's failure to procure the clean drug tests was deficient because it did not allow him to defend against the Division's overall case, which relied heavily on both parents' drug use, and because it allegedly limited his counsel's ability to cross examine the Division's experts at trial. He concludes it is "reasonably probable that" had this information been admitted, the outcome would have been different. We disagree.

We are mindful that the termination of parental rights "implicates a fundamental liberty interest;" as such, a parent in a termination case is entitled to effective assistance of counsel. New Jersey Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 305–06 (2007). In a termination case, counsel's performance is evaluated by the standard for ineffective assistance of counsel

established in Strickland v. Washington, 466 U.S. 668, 687 (1984). B.R., 192 N.J. at 308-09. A parent must satisfy the two-part test enunciated in Strickland by demonstrating that: (1) counsel's performance was deficient, and (2) the deficient performance actually prejudiced the accused's defense. 466 U.S. at 687. In reviewing such claims of ineffectiveness, courts apply a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. In a parental termination case, claims of ineffective assistance of counsel must be raised on direct appeal. R. 2:10-6.

The father submits on appeal two drug tests showing he tested negative for cocaine, marijuana, and opiates. The first was performed on November 7, 2018 and the second on January 16, 2019. The Law Guardian argues that there was no prejudice because the father's "testing negative for substances on two occasions is a mere drop in the bucket of his extensive history of substance abuse and failure to attend treatment." Likewise, the Division argues these tests would not have overcome the totality of the circumstances, including the father's "mental health issues, unstable housing, domestic violence, failure to consistently visit and overall non-compliance with services."

12

The father's argument fails to meet either element of the <u>Strickland</u> test. He argues that the failure to produce records limited his counsel's cross examination, because the trial court threatened to strike questions about his alleged sobriety without actual proof. Nevertheless, his counsel did ask Dr. Kirschner about whether the father's recent sobriety would change his opinion about the father's fitness as a parent. Dr. Kirschner notably testified in response that it would not.

As the Division and Law Guardian correctly argue, there was also no palpable prejudice stemming from the omission of the two clean drug tests. The father never had custody of the child due to his criminal record, and there is no indication he has had stable housing throughout this process. Also, the father failed to utilize critical batterer's intervention services to address his history of domestic violence and abuse.

In sum, there is sufficient evidence to terminate the father's parental rights even if the trial court had considered his recent sobriety, because he has not addressed the physical and psychological issues that made him incapable of providing his son with a safe and stable home. The father was not deprived of the effective assistance of trial counsel in violation of <u>B.R</u>.

13                                                                     A-3886-18T2

All other points raised on appeal lack sufficient merit to warrant discussion in this opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3886-18T2