# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3063-16T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

     Plaintiff-Respondent,

v.

K.S.S.,

     Defendant-Appellant,

and

A.G.,

     Defendant.

_____

IN THE MATTER OF THE GUARDIANSHIP OF
M.A.G., a Minor.

_____

Submitted September 12, 2018 – Decided September 24, 2018

Before Judges Yannotti, Gilson and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0216-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Marc D. Pereira, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Casey J. Woodruff, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Joseph H. Ruiz, Designated Counsel, on the brief).

PER CURIAM

K.S.S. appeals from a judgment entered by the Family Part, which terminated her parental rights to M.A.G. and awarded guardianship of the child to the Division of Child Protection and Permanency (Division). On appeal, K.S.S. contends the Division failed to establish the criteria for termination of her parental rights codified in N.J.S.A. 30:4C-15.1(a) with clear and convincing evidence. K.S.S. also argues that she was denied the effective assistance of counsel in the trial court proceedings. Having considered these arguments in light of the record and applicable legal principles, we affirm.

I.

The Division first became involved with K.S.S. in September 2010, when the Division learned that she was living in a shelter with her three children, K.S., J.S., and Z.W. K.S.S. reportedly left the children unsupervised. The Division received additional referrals about K.S.S. in November 2010, June 2011, October 2011, and August 2012. The referrals included allegations that K.S.S. failed to provide the children with adequate care, exposed the children to incidents of domestic violence, used excessive corporal punishment, and smoked marijuana and drank alcohol in the presence of the children.

In September 2012, the Division filed an order to show cause and verified complaint in the Family Part seeking custody of K.S., J.S., and Z.W. The trial court conducted a fact-finding hearing and found that K.S.S. abused or neglected the children by placing them at substantial risk of harm. On August 7, 2013, the court approved the Division's plan for termination of K.S.S.'s parental rights to K.S., J.S., and Z.W., followed by their adoption.

In November 2014, the Division learned that K.S.S. had given birth to M.A.G. It appears that K.S.S. was incarcerated until August 2014 for a domestic violence incident involving A.G., the child's father, and K.S.S. did not have prenatal care while in jail. The Division offered K.S.S. the opportunity for a

family team meeting, which she declined. M.A.G. was discharged to K.S.S.'s care.

In March 2015, T.S., K.S.S.'s mother, reported to the Division that after K.S.S. met with her probation officer, she became "erratic" and violent. According to T.S., K.S.S. kicked and banged on doors, pushed and punched her, and came at her with a butcher knife. M.A.G. was with A.G. at the time of this incident. The police arrived and transported K.S.S. to East Orange General Hospital (EOGH).

One of the Division's workers went to A.G.'s home and found M.A.G. The home was littered with beer cans, and A.G. appeared to be intoxicated. The Division executed an emergency removal of M.A.G. A caseworker went to EOGH to meet with K.S.S., but she was reportedly "very out of it." EOGH's staff informed the caseworker that K.S.S. was sedated because she acted erratically when she was admitted to the hospital.

On March 2, 2015, the Division filed an order to show cause and verified complaint in the Family Part seeking custody of M.A.G. The trial court granted the application, and thereafter the Division began to provide A.G. services. The Division also monitored K.S.S.'s mental health treatment. She remained

4

hospitalized. A worker noted that K.S.S.'s hands were in restraints, and hospital records indicated she had engaged in "unprovoked attacks" upon staff members. In April 2015, K.S.S. was transferred to Meadowview Psychiatric Hospital.

On May 4, 2015, the Family Part entered a judgment of guardianship terminating K.S.S.'s parental rights to K.S., J.S., and Z.W., and K.S.S. appealed. We later affirmed the termination of her parental rights to the three children. Div. of Child Prot. & Perm. v. K.S.S., Nos. A-4216-14 and A-5006-14 (App. Div. April 12, 2016) (slip op. at 23). In our opinion, we stated:

> K.S.S. has a history of mental illness requiring inpatient hospitalizations. At the time of the trial, she was committed to a psychiatric institution. [K.S.S.] has been hospitalized and treated for psychosis and seizures, and suffers from long term chronic problems with alcohol and drug abuse. In addition, [K.S.S.] has a history of unstable and volatile relationships involving domestic violence. She has subjected her children to risk of harm because of these unstable relationships. Significantly, the Division clearly and convincingly, if not irrefutably, demonstrated K.S.S.'s inability to provide for the basic needs of the three children including adequate food and a sanitary shelter.
>
> [Id. at 3-4.]

On May 12, 2015, K.S.S. was transferred to the Jersey City Medical Center for medical stabilization. On May 21, 2015, a judge entered a temporary order for K.S.S.'s involuntary commitment. A psychiatrist provided the court

with a screening certificate, stating that K.S.S. suffers from a mental illness, and was unwilling to be voluntarily admitted to a required treatment program for care. The certificate also stated that if not committed, K.S.S. would be a danger to herself or others by reason of her mental illness. The court scheduled the matter for a commitment hearing on June 9, 2015. It appears that the court continued K.S.S.'s involuntary commitment.

K.S.S. was returned to Meadowview on June 30, 2015. She was diagnosed with chronic undifferentiated schizophrenia, a history of polysubstance abuse and dependency, limited cognitive ability, and seizure disorder. Her thought process was disorganized, she was selectively mute, and she engaged in impulsive aggressive behavior.

In August 2015, K.S.S. was transferred to Greystone Park Psychiatric Hospital (Greystone) so she could receive a higher level of care. After an initial assessment, Greystone's staff determined that K.S.S. posed a danger to herself or others. In September 2015, the Division's caseworker spoke with a Greystone social worker, who reported that K.S.S. denied having any children and thought M.A.G. was her nephew. The Greystone social worker noted that it was difficult to communicate with K.S.S. and that at times she was very aggressive.

A-3063-16T1

In December 2015, a psychiatrist at Greystone provided the court with a commitment hearing report, which stated that K.S.S. had a significant history of violence towards others and assaulted her peers numerous times while at the hospital. K.S.S. also was under observation for unpredictable harm to herself and others. She had spoken of killing herself and one of her children. The report stated that K.S.S. posed a danger to herself and others and recommended continuing K.S.S.'s involuntary commitment. It appears the judge continued the commitment.

In March 2016, the Family Part judge approved the Division's plan for termination of K.S.S.'s and A.G.'s parental rights to M.A.G. Thereafter, the Division filed its complaint seeking guardianship of M.A.G., and the judge appointed a guardian ad litem for K.S.S. She refused, however, to speak with the guardian ad litem. She also refused to communicate with the attorney assigned to represent her.

In June 2016, a judge conducted a review hearing on K.S.S.'s involuntary commitment. A psychiatrist at Greystone provided the court with a commitment hearing report, which noted that K.S.S. had been diagnosed with psychotic disorder, not otherwise specified; schizoaffective disorder, bipolar type; substance use disorder; and cognitive disorder due to a head injury. The

psychiatrist noted that since her previous review hearing, there had been no significant improvement in K.S.S.'s condition.

The psychiatrist also noted that K.S.S. remained isolated. She was uncooperative and selectively mute. At times, she was suspicious and paranoid. In addition, K.S.S. refused medication and daily personal care. The staff had administered medications by injection because of her aggressive behavior. The psychiatrist concluded that K.S.S. remained a danger to others and that she was unable to care for herself. He recommended continuing the involuntary commitment. The judge continued K.S.S.'s commitment.

In August 2016, Greystone performed an annual psychiatric assessment of K.S.S., which found that that she was disorganized, uncooperative, and easily agitated. Her compliance with medications was poor. She did not attend group meetings or activities, and complained of hearing voices telling her to harm herself or others. She also had assaulted staff and engaged in physical altercations with other patients.

Meanwhile, the Division referred A.G. to Dr. Mark Singer for a psychological evaluation. Dr. Singer found A.G. was not a viable parenting option for M.A.G. because of his substance abuse problems and his failure to comply with services. Dr. Singer also performed bonding evaluations of M.A.G.

8

and A.G., and M.A.G. and his resource parents. In addition, the Division considered and ruled out relatives and family friends as potential placements.

In February 2017, the judge conducted a trial on the Division's guardianship complaint, and the Division presented testimony from caseworker Latoya Bowers and Dr. Singer. Neither K.S.S., A.G., nor the Law Guardian for M.A.G. presented any witnesses. On February 28, 2017, the judge placed an oral decision on the record, finding that the Division had established the criteria for termination of parental rights in N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. The judge entered a judgment terminating K.S.S.'s and A.G.'s parental rights to M.A.G. and awarded the Division guardianship of the child. K.S.S.'s appeal followed. A.G. has not appealed.

## II.

On appeal, K.S.S. argues that the judgment should be reversed because the Division did not establish the statutory criteria for termination of her parental rights with clear and convincing evidence.

Initially, we note that the scope of our review in an appeal from an order terminating parental rights is limited. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (citing In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). "Appellate courts must defer to a trial judge's findings of fact

if supported by adequate, substantial, and credible evidence in the record." Ibid. (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). Moreover, due to its expertise in family matters, the Family Part's factual findings "are entitled to considerable deference." D.W. v. R.W., 212 N.J. 232, 245 (2012) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)).

The Division may initiate a petition to terminate parental rights in the "best interests of the child" and the court may grant the petition if the Division establishes the criteria codified in N.J.S.A. 30:4C-15.1(a) with clear and convincing evidence. N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 166–68 (2010). "The four criteria enumerated in the best interests standard are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." Id. at 166 (quoting N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 506–07 (2004)).

A. Prong One

K.S.S. argues that the judge erred by finding that the Division established prong one of the best interests standard, which requires the Division to prove "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship." N.J.S.A. 30:4C-15.1(a)(1). The focus

of prong one is not on a single or isolated harm, but rather upon "the effect of harms arising from the parent-child relationship over time on the child's health and development." In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999).

K.S.S. contends the judge erred by relying on the criteria for involuntary civil commitment when finding that the Division established the first prong of the best interests standard.  She contends that the judge failed to make a specific factual finding that M.A.G.'s safety, health, or development has been harmed by his relationship with her, as required by N.J.S.A. 30:4C-15.1(a)(1).  K.S.S. further argues that the judge placed undue reliance upon the incident in which she allegedly came at her mother with a knife.  She asserts the police report stated that no weapon was involved.  She contends that while M.A.G. was in her care, she never put the child "in harm's way."

We are not persuaded by these arguments.  In addressing prong one, the Family Part judge did not err by noting the criteria for involuntary commitment. A court may order the involuntary commitment of a person if there is clear and convincing evidence that the person is mentally ill, the illness causes the person to be dangerous to herself or others, the person is unwilling to be admitted for care voluntarily, and less restrictive alternative services are not appropriate or available.  R. 4:74-7(f)(1); N.J.S.A.30:4-27.9(b).

It is undisputed that beginning in March 2015, K.S.S. was hospitalized for psychiatric care. In May 2015, K.S.S. was involuntarily committed to a psychiatric hospital, and that commitment was repeatedly extended. The judge in this case did not err by referring to the legal basis for the involuntary civil commitment. Indeed, K.S.S.'s involuntary commitment was relevant to whether M.A.G.'s safety, health, and development were endangered by his relationship to K.S.S.

Moreover, while K.S.S. was hospitalized for psychiatric care, she was incapable of parenting M.A.G., and he could not be returned to her care. Consequently, K.S.S. was unable to provide M.A.G. with a safe and stable home.

Our Supreme Court has observed that "the attention and concern of a caring family is 'the most precious of all resources.'" In re Guardianship of DMH, 161 N.J. 365, 379 (1999) (quoting N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 613 (1986)). The Court emphasized that, "[a] parent's withdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." Ibid. (citing K.H.O., 161 N.J. at 352-54). Here, M.A.G. was harmed by K.S.S.'s inability to provide him with solicitude, nurture and care for an extended period.

Furthermore, there is ample evidence showing that K.S.S. was at times violent and threatened to harm others. While there is no evidence that K.S.S. physically harmed M.A.G., he would have been exposed to a substantial risk of harm if he had been reunited with K.S.S. We conclude there is substantial credible evidence to support the trial court's finding that M.A.G.'s safety, health, and development were harmed by his relationship with K.S.S.

B. Prong Two

Prong two of the best interests standard requires the Division to show that "[t]he parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). In addressing this prong, the court must focus on whether the parent has overcome the harms that endanger the child and whether the parent is able to prevent further harm from the parental relationship. K.H.O., 161 N.J. at 348-49.

On appeal, K.S.S. argues the record does not support the judge's finding that she is dangerous to herself and others. She claims she never assaulted her mother with a knife, but merely acted "erratically."[1] K.S.S. further argues that

---

[1] The police report indicates that K.S.S.'s mother reported K.S.S. was acting in a disorderly manner without weapons. However, the Division's records state that K.S.S.'s mother stated that K.S.S. came at her with a butcher's knife.

when she was caring for M.A.G., there were no hazardous conditions in the home or safety concerns. She claims she provided M.A.G. with adequate and appropriate care. She contends the record does not support a finding that she is unwilling or unable to provide a safe and stable home for M.A.G. We disagree.

As we have explained, since March 2015, K.S.S. has been hospitalized for psychiatric treatment. In May 2015, she was involuntarily committed for such care. During her hospitalizations, she did not engage in treatment. Moreover, K.S.S. engaged at times in violent and assaultive behavior, and threatened to harm herself and others. She also was noncompliant with her medications. She continues to suffer from a severe mental illness. The record therefore supports the judge's finding that K.S.S. is unable to eliminate the harm to M.A.G. or provide the child with a safe and stable home within the foreseeable future. The record also shows that a delay in a permanent placement will cause the child to suffer additional harm.

C. Prong Three

Prong three of the best interests standard requires the Division to establish that it made reasonable efforts "to help the parent correct the circumstances which led to the child's placement outside the home." N.J.S.A. 30:4C-15.1(a)(3). For purposes of prong three, the reasonableness of the Division's

14

efforts is not measured by whether the efforts were successful in bringing about reunification of the parent and child. DMH, 161 N.J. at 393. The Division's "efforts must be assessed against the standard of adequacy in light of all the circumstances of a given case." Ibid.

Here, the judge observed that K.S.S. had not seen M.A.G. since February 2015, when he was three months old, and K.S.S. did not seek visitation until January 2017. The judge had denied the request but allowed K.S.S. to submit additional evidence indicating that such visits would be appropriate. K.S.S. did not, however, present any additional evidence in support of her request for visitation, and her attorney did not raise the issue again until the trial.

The judge also noted that the Division had considered referring K.S.S. to Dr. Singer for a psychological evaluation. The evaluation was not performed because facilities where K.S.S. was involuntarily committed were performing such evaluations. The judge found that any services the Division would have offered "would [have been] duplicative."

On appeal, K.S.S. argues that the Division failed to meet its obligations under prong three because it did not offer her any services. She contends the Division made no attempt to contact her from September 2015 to June 2016 because the social worker at Greystone reported that K.S.S. thought M.A.G. was

15

her nephew. She contends the Division made no attempt to return M.A.G. to her care. She asserts the Division focused all of its efforts on reunification of the child with his father.

K.S.S. further argues that the Division made no effort to determine whether she had made the statement about M.A.G. that Greystone's social worker had attributed to her. She also contends the Division did not consider the possible effect her prescribed medications may have had upon her behavior. She asserts that her medication sometimes makes her "forget things."

There is, however, sufficient credible evidence in the record to support the judge's finding that the Division made reasonable efforts to assist K.S.S. correct the circumstances that led to M.A.G.'s removal. As the judge found, while K.S.S. was hospitalized for psychiatric care, she was provided treatment and services and any additional services the Division would have provided would have been duplicative. The Division did not have a psychological evaluation performed of K.S.S., but such evaluations were performed by the psychiatric hospitals where she was being treated.

Moreover, there is no merit to K.S.S.'s contention that the Division erred by failing to provide her with visitation. The record supports the judge's finding that it would not have been appropriate for M.A.G. to visit K.S.S. in the

A-3063-16T1

psychiatric hospital or where she was being treated, and K.S.S. never presented the trial court with any evidence indicating that such visits would have been in the child's best interests.

D. Prong Four

Prong four of the best interests standard requires the Division to show that termination of parental rights will not do more harm than good. N.J.S.A. 30:4C-15.1(a)(4). "[T]he fourth prong of the best interests standard cannot require a showing that no harm will befall the child as a result of the severing of biological ties." K.H.O., 161 N.J. at 355.

In addressing prong four, the court must balance the relationships of the biological parent and the child, and determine whether the child will suffer greater harm from terminating the child's ties with his or her biological parent than from permanent disruption of the child's relationship with a resource parent. N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 435 (App. Div. 2001).

Here, the trial judge noted that there was no evidence that M.A.G. had a significant parental relationship with K.S.S. Beginning in March 2015, K.S.S. was hospitalized for psychiatric treatment. While she was hospitalized, K.S.S. did not have any contact with M.A.G. The judge pointed out that K.S.S. had not

seen M.A.G. since he was three months old. The judge noted that Dr. Singer testified that M.A.G. had formed secure bonds with his resource parents, which continued to grow stronger every day.

Moreover, Dr. Singer testified that M.A.G.'s resource parents were functioning as his psychological parents, and he opined that the child would experience "significant and enduring harm" if he were removed from them. In addition, the resource parents indicated they intended to adopt M.A.G. The judge found that the Division had clearly and convincingly established that termination of K.S.S.'s parental rights to M.A.G. would not do more harm than good.

On appeal, K.S.S. argues that Dr. Singer's opinion that termination of her parental rights to M.A.G. would be in the child's best interests amounts to "pure speculation" because the doctor never met her and did not perform a bonding evaluation of her relationship with M.A.G. She asserts the absence of a bonding evaluation cannot be justified in this case.

We reject K.S.S.'s contention that Dr. Singer's opinion amounts to "pure speculation." It is undisputed that M.A.G. was removed from K.S.S. when he was three months old and thereafter M.A.G. had no relationship with K.S.S. Under the circumstances, the Division was not required to provide the court with

18

a bonding evaluation of K.S.S.'s relationship with M.A.G.  Moreover, Dr. Singer testified that the child has formed secure bonds with his resource parents, which continued to grow stronger each day.

There is sufficient credible evidence in the record to support the trial judge's finding that M.A.G. will suffer no harm if K.S.S.'s parental rights to M.A.G. are terminated, and the child would suffer significant and enduring harm if removed from his resource parents.  Therefore, the record supports the judge's finding that the Division clearly and convincingly established that termination of K.S.S.'s parental rights would not do more harm than good.

## III.

K.S.S. argues she was denied the effective assistance of counsel in the trial court proceedings.  She contends her attorney was deficient because counsel failed to object to the admission of testimony that K.S.S. told a social worker at Greystone she believed M.A.G. was her nephew.  K.S.S. maintains the social worker's statement was inadmissible double hearsay.  She also argues that her attorney erred by failing to schedule a bonding evaluation of her relationship with M.A.G.

A claim of ineffective assistance of counsel in a guardianship proceeding must be raised in a direct appeal from the final judgment.  See R. 5:12-7

19

("Claims of ineffective assistance of trial counsel shall be raised exclusively on direct appeal of a final judgment or order."). To establish the ineffective assistance of counsel, K.S.S. must meet the two-prong test established in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court for matters involving the termination of parental rights. N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 308–09 (2007).

Therefore, K.S.S. first must show that her attorney's performance was deficient because it "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. K.S.S. also must establish there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Here, K.S.S.'s claims of ineffective assistance of counsel fail because she has not established either prong of the Strickland test.

K.S.S.'s attorney could have objected to the admission of the Greystone social worker's statement, but if such an objection had been raised, the Division could have subpoenaed the social worker to testify. Furthermore, counsel's failure to object did not prejudice K.S.S. because the result here would have been the same even if the social worker's statement had been excluded. The other evidence presented by the Division was more than sufficient to establish

all four prongs of the best interests standard and show that termination of K.S.S.'s parental rights was in M.A.G.'s best interests.

Moreover, K.S.S.'s attorney did not err by failing to schedule a bonding evaluation. K.S.S. has not established that such an evaluation would have shown she had a meaningful bond with M.A.G. As noted, the child was removed from K.S.S.'s custody when he was three months old and he had no relationship with K.S.S. thereafter due to her hospitalizations and involuntary civil commitment. Therefore, K.S.S. was not prejudiced by the absence of a bonding evaluation. In addition, K.S.S. has not established that the result of this proceeding would have been different if such an evaluation had been performed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3063-16T1