# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1779-19T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.S.,

     Defendant-Appellant,

and

F.A. and E.M.,

     Defendants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.X.A.,
a minor.

_____

Submitted October 5, 2020 – Decided October 23, 2020

Before Judges Fasciale and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0221-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Robin A. Veasey, Deputy Public Defender, of counsel; Bruce P. Lee, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Nicholas Dolinsky, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Todd Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant S.S. (the mother) appeals from a December 16, 2019 order terminating her parental rights to her son J.X.A. (the child), born in 2017, and awarding guardianship to the Division of Child Protection and Permanency (the Division). The Division removed the child, who has special needs and is thriving in foster care, when he was approximately seven months old primarily because of the mother's inability to parent the child. Judge Radames Velazquez, Jr. presided over trial, entered judgment, and rendered a thirty-one-page comprehensive written opinion.

On appeal, the mother argues:

[POINT I]

THE [JUDGE] LACKED PERSONAL JURISDICTION OVER [THE MOTHER], THEREFORE THE JUDGMENT TERMINATING PARENTAL RIGHTS SHOULD BE VACATED. (NOT RAISED BELOW).

[POINT II]

[THE MOTHER'S] RIGHT TO COUNSEL WAS VIOLATED BY THE [JUDGE'S] FAILURE TO APPOINT A GUARDIAN AD LITEM. (NOT RAISED BELOW).

[POINT III]

BECAUSE OF D.S.'S[1] OVERPOWEING INFLUENCE ON [THE MOTHER], THE [JUDGE'S] FINDINGS UNDER PRONG II [WERE] NOT SUPPORTED BY THE CREDIBLE AND SUFFICIENT EVIDENCE.

We disagree and affirm.

I.

We begin by addressing the mother's contention—raised for the first time—that the court lacked personal jurisdiction over her because she was suffering from cognitive difficulties and mental health problems and was overborne by D.S.'s controlling behavior. The mother argues that these things rendered her incapable of making her own decisions, the judge should have sua sponte

---

[1] D.S. is the maternal grandmother.

A-1779-19T3

appointed a guardian ad litem (GAL), and that the failure to do so requires us to vacate the judgment. By not sua sponte appointing a GAL, we see no error or abuse of discretion.

Our Supreme Court has made it abundantly clear that "issues not raised below will ordinarily not be considered on appeal unless they are jurisdictional in nature or substantially implicate the public interest." New Jersey Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 339 (2010) (citation omitted). Although the appointment of a GAL is not purely jurisdictional in nature and does not substantially implicate the public interest, we will nevertheless consider her contentions.

A guardian for a "mentally incapacitated person" is authorized to prosecute a legal action on her behalf. Rule 4:26-2(a). But the role of a GAL, unlike a guardian, for an alleged mentally incapacitated person is limited. Rule 4:26-2(b). See S.T. v. 1515 Broad Street, LLC., 241 N.J. 257, 278 (2020) (explaining the different roles guardians and GALs play). The GAL's responsibility is to "advise the court as to whether a formal competency hearing may be necessary and if so, to represent the alleged mentally incapacitated person at that hearing." Ibid. (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 4:26-2 (2020)). Thus, a GAL would not be able to make

legal decisions for the mother.  See S.T., 241 N.J. at 279 (stating "[n]othing in our court rules, statutes, or case law suggests that a [GAL] appointed to investigate a client's alleged mental incapacity has the power to make legal decisions for the client before a judicial determination on her mental capacity").

Under Rule 4:26-2(b)(4), a court has discretion to appoint a GAL.  But once appointed, the GAL's role is to "act as an independent investigator and inform the court on the subject of the client's mental capacity."  Ibid.  In such a case, a GAL's recommendation would be whether a formal hearing should proceed under Rule 4:86.  Ibid.  Regardless of the GAL's recommendation, only the court makes its own independent findings about the alleged mental incapacity.  Ibid.

We emphasize that contrary to the mother's assertion in her merits brief, a GAL does not have the responsibility for "actually making legal decisions" on her behalf.  At best, a guardian would have that authority, not a GAL.  She erroneously argues—for the first time—that a GAL could have decided whether to allow an identified surrender, could have testified for the mother, and could have filed a motion to hold D.S. in contempt of court for interfering with the mother's attempt to comply with services.  In her merits brief, the mother contends for the first time that D.S.'s "overpowering influence," her own

5

impairment, and her diagnosis of schizoaffective disorder (bipolar type), rendered her allegedly incompetent to manage her own affairs. This is different than her defense theory at the Family Guardianship (FG) trial.

Even if the judge appointed a GAL, the appointment would not have changed the outcome of the trial because—focusing on prong two as the mother has on this appeal—whether she was unable or unwilling to parent remained a central issue. The testimony and expert opinions introduced at the FG trial focused on the mother's parental fitness, not whether she was unable to manage her own affairs or govern herself. In that context, the experts explained their recommended treatment for her mental and psychological issues. Indeed, cross-examination of the experts by the mother's counsel did not seek to uncover her incapacity to manage her own affairs; rather, counsel elicited testimony about the mother's normative behavior (such as positive aspects of her mannerisms; the clarity of her speech; her positive mood; the denial of hallucinations, suicidal ideations, and depression; and her stable housing, good behavioral control, and adherence to a medication regimen), and highlighted the treatability of her mental condition. At trial, therefore, her counsel defended the allegations in the FG complaint by suggesting that the mother was capable of parenting, which

A-1779-19T3

contradicts her new argument that a GAL was necessary to address the mother's alleged incompetency.

Further undermining her GAL contention are the numerous examples of the mother's understanding that she needed to comply with the Division's recommendations to achieve reunification. For example, the mother acknowledged that failure to work with the Division led to the child's removal and undermined reunification; she affirmed what she had to do for reunification; and she agreed that she could not let D.S. dictate her own decisions. The record shows that the mother understood D.S.'s behavior would undoubtedly hinder the mother's goal, and that the mother understood the need to follow through and complete the mental health evaluations. The mother therefore demonstrated she understood what reunification required and her own decision-making authority in the process.

## II.

We are mindful that the termination of parental rights "implicates a fundamental liberty interest;" as such, a parent in a termination case is entitled to effective assistance of counsel. New Jersey Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 305–06 (2007). In a termination case, counsel's performance is evaluated by the standard for ineffective assistance of counsel

A-1779-19T3

established in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). <u>B.R.</u>, 192 N.J. at 308-09. A parent must satisfy the two-part test enunciated in <u>Strickland</u> by demonstrating that: (1) counsel's performance was deficient; and (2) the deficient performance actually prejudiced the defense. 466 U.S. at 687. In reviewing claims of ineffectiveness, courts apply a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690. In a parental termination case, claims of ineffective assistance of counsel must be raised on direct appeal. <u>R.</u> 2:10-6.

Here, the mother contends—for the first time—that D.S. (her own mother) interfered with her defense. Rather than applying <u>Strickland</u> and arguing her attorney rendered ineffective assistance, she contends that the judge's failure to sua sponte appoint a GAL "violated" her right to counsel. In her merits brief, the mother contends that a GAL was "necessary" to limit D.S.'s role and preserve her right to counsel. Of course, she had legal representation; but—as further explained in her reply brief—she suggests that the failure to appoint a guardian (not a GAL) deprived her of a meaningful attorney-client relationship, if one at all.

Our review of the record demonstrates otherwise. The mother had ample opportunities to interact in private with her counsel without the outside influences about which she now argues. The mother was present at almost every guardianship hearing, without D.S., and could communicate privately with counsel, who strongly advocated for her. The mother similarly had other opportunities to participate in this case outside of D.S.'s involvement, including consistent therapeutic visits with the child, a psychological evaluation by Dr. Mack, and by directly communicating with the Division caseworker. From our review of the record, these opportunities occurred throughout most of the litigation. It is therefore not surprising that the mother never raised earlier that she was deprived a meaningful attorney-client relationship.

And there is no reasonable suggestion that the mother's counsel's rendered services were deficient or that counsel in any way prejudiced the mother. To the contrary, counsel represented the mother throughout the entire litigation, cross-examined witnesses, and advocated for reunification. We see no credible evidence demonstrating that D.S. interfered with counsel's ability to zealously represent the mother, particularly where counsel never raised this as an issue during the litigation.

A-1779-19T3

Although the mother argues for the first time in her reply brief that a "formal [competency] inquiry under [Rule] 4:86" was required because she "suffered from psychological impairments," at trial, the mother contended that she had adequately maintained housing, adhered to her medication regimen, and maintained good behavior. The mother expressed a desire for reunification and verbally expressed that desire in a logical fashion by submitting to evaluations and visits with the child. Not once did she take the position that she was unable to parent, let alone manage her own affairs. Indeed, if she had, such a position would have undercut her trial-court argument that she was fit to parent the child.

III.

Finally, we reject the mother's argument that the Division failed to satisfy its burden. There exists a well-settled legal framework regarding the termination of parental rights. Parents have a constitutionally protected right to the care, custody, and control of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). However, that right is not absolute. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a parent's interest must yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Family Servs. v. G.M., 198

10

N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992). To effectuate these concerns, the Legislature created a test to determine when it is in the child's best interest to terminate parental rights. To terminate parental rights, N.J.S.A. 30:4C-15.1(a) requires the Division to prove four prongs by clear and convincing evidence:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from [her] resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the [judge] has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

See also A.W., 103 N.J. at 604-11. The four prongs of the test are "not discrete and separate," but "relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J.

11

at 348. "The considerations involved in determinations of parental fitness are 'extremely fact sensitive' and require particularized evidence that address the specific circumstances in the given case." Ibid. (quoting In re Adoption of Children by L.A.S., 134 N.J. 127, 139 (1993)).

Our review of a family judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "When a biological parent resists termination of his or her parental rights, the [judge's] function is to decide whether that parent has the capacity to eliminate any harm the child may already have suffered, and whether that parent can raise the child without inflicting any further harm." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 87 (App. Div. 2006). The factual findings that support such a judgment "should not be disturbed unless 'they are so wholly insupportable as to result in a denial of justice,' and should be upheld whenever they are 'supported by adequate, substantial and credible evidence.'" In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). "[T]he conclusions that logically flow from those findings of fact are, likewise, entitled to deferential consideration upon appellate review." R.L., 388 N.J. Super. at 89.

A-1779-19T3

The mother argues that the Division failed to prove prong two, which implies that it proved prongs one, three, and four. We conclude that the Division proved all four prongs by clear and convincing evidence. We do so substantially for the reasons given by the judge. As to prong two, however, we add the following remarks.

The second prong of the best interests test requires the Division to present clear and convincing evidence that "[t]he parent is . . . unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). The judge must consider whether the parent cured and overcame the initial harm that endangered the child and whether the parent is able to continue the parental relationship without recurrent harm to the child. K.H.O., 161 N.J. at 348-49. To satisfy its burden, the Division must show the child faces continued harm because the parent is unable or unwilling to remove or overcome the harm. N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 483 (App. Div. 2012). The first and second prongs are related, and often, "evidence that supports one informs and may support the other as part of the comprehensive basis for determining the best interests of the child." D.M.H., 161 N.J. at 379.

"Parental unfitness may also be demonstrated if the parent has failed to provide a 'safe and stable home for the child' and a 'delay in permanent placement' will further harm the child." K.H.O., 161 N.J. at 352 (quoting N.J.S.A. 30:4C-15.1(a)(2)). "Keeping [a] child in limbo, hoping for some long[-]term unification plan, would be a misapplication of the law." N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 438 (App. Div. 2001).

As to prong two, the judge found the mother is "unable and unwilling to provide a safe and stable home for [the child] and that a delay of permanency will add to the harm that [the child] has already endured." He pointed out the mother's "compliance with the Division has been sporadic at best." He found she had only been "partially compliant with services." Although the mother had "almost two years to come to terms with her schizoaffective disorder and come up with a treatment and maintenance plan," the judge found that she "adamantly refused to engage in a partial hospitalization program, despite the Division and multiple doctors referring her to such a program." Indeed, the judge found that she ignored the treating doctor's recommendations. Failing to treat her condition "risks manifestation of symptoms," and the judge further found that the mother has not confronted her mental illness or willingly sought out proper treatment.

As to D.S., the Division told the mother that distancing herself would improve compliance with services. But, as the judge found, the mother did "just the opposite." The mother willingly obtained an apartment with D.S. during the litigation and failed to work with the Division to remove D.S. as payee on her social security benefits, which the judge concluded was a manifestation of the mother's "unwillingness to change her situation and improve her parenting ability." Along those line, the judge found that although the Division scheduled multiple bonding evaluations between the mother and the child, the mother failed to attend, which the judge explained "sheds light on her lack of commitment to parenting [the child]." Finally, the judge found that the mother "does not believe that she has a mental illness that requires continuous treatment."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-1779-19T3