929 A.2d 1034

NEW JERSEY DIVISION OF YOUTH AND FAMILY
SERVICES, PLAINTIFF–RESPONDENT, v.
B.R., DEFENDANT–APPELLANT.

IN THE MATTER OF THE GUARDIANSHIP
OF A.W. AND A.R., MINORS.

Argued May 2, 2007—Decided July 25, 2007.

*Dianne Glenn,* Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Maureen B. Bull,* Deputy Attorney General, argued the cause for respondent New Jersey Division of Youth and Family Services (*Stuart Rabner,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel).

*Christopher A. Huling,* Assistant Deputy Public Defender, argued the cause for respondents A.W. and A.R. (*Yvonne Smith Segars,* Public Defender, attorney).

*Melville D. Miller, Jr.,* President, argued the cause for amicus curiae, Legal Services of New Jersey (*Mr. Miller,* attorney; *Mr. Miller, Diana Dunker* and *Mary M. McManus–Smith,* on the brief).

Justice LONG delivered the opinion of the Court.

After a lengthy trial, B.R.'s parental rights to her children, A.W. and A.R., were terminated under *N.J.S.A.* 30:4C–15.1, on the ground that the New Jersey Division of Youth and Family Services (DYFS) had proven by clear and convincing evidence that the safety, health, and welfare of A.W. and A.R. had been and would continue to be endangered by B.R. because of her severe

and persistent abuse and neglect of the children; that B.R. is unwilling or unable to provide a safe and stable home for the children; that further delay in permanency planning would add to that harm; that DYFS had made reasonable efforts to provide services to B.R.; that all other alternatives to termination were considered and deemed to be inappropriate; and that the termination of parental rights would not do more harm than good.

B.R. appealed.[1] The Appellate Division concluded that the trial judge's findings were fully supported by the record and rejected B.R.'s claims of ineffective assistance of counsel on the ground that that concept is "legally inapplicable to this civil proceeding, despite the important parental rights involved." The panel went on to note, however, that on the merits, B.R.'s representation was not ineffective.

B.R. filed a petition for certification claiming that she was entitled to and had been denied effective assistance of counsel in the termination proceeding. We granted the petition, 185 *N.J.* 393, 886 *A.*2d 663 (2005), and accorded amicus curiae status to Legal Services of New Jersey (Legal Services).

I.

Although DYFS argued against B.R.'s entitlement to effective assistance of counsel before the Appellate Division, at this point, all parties agree that a parent who is the subject of a termination action has the right to the effective assistance of counsel. However, they reach that conclusion by different routes. B.R. and Legal Services point to the constitutional underpinnings of the right to counsel itself as the basis for the parallel right to effective assistance of counsel, whereas DYFS argues that we need only recognize the statutory right to counsel, adding that fairness requires that such counsel perform in an effective manner.

---

[1] The respective fathers' parental rights were terminated previously, and the fathers are not involved in the appeal.

The parties also differ in respect of the standard against which effective assistance of counsel should be measured, with DYFS advancing the criminal standard of *Strickland v. Washington,* 466 *U.S.* 668, 104 *S.Ct.* 2052, 80 *L.Ed.*2d 674 (1984), and B.R. advocating for a more flexible approach. Finally, the parties disagree over whether B.R. was adequately represented below.

## II.

It is beyond dispute that the termination of parental rights implicates a fundamental liberty interest. *Stanley v. Ill.,* 405 *U.S.* 645, 651, 92 *S.Ct.* 1208, 1212–13, 31 *L.Ed.*2d 551, 558–59 (1972); *Watkins v. Nelson,* 163 *N.J.* 235, 245, 748 *A.*2d 558 (2000); *cf. Doe v. Poritz,* 142 *N.J.* 1, 120, 662 *A.*2d 367 (1995) (explaining need to determine whether practice "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental"); *State v. Parker,* 124 *N.J.* 628, 648, 592 *A.*2d 228 (1991) (same), *cert. denied,* 503 *U.S.* 939, 112 *S.Ct.* 1483, 117 *L.Ed.*2d 625 (1992). This Court has emphasized:

the inviolability of the family unit, noting that "[t]he rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights of man,' and '[r]ights far more precious than property rights.'" The interests of parents in this relationship have thus been deemed fundamental and are constitutionally protected.

[*N.J. Div. of Youth & Family Servs. v. A.W.,* 103 *N.J.* 591, 599, 512 *A.*2d 438 (1986) (quoting *Stanley, supra,* 405 *U.S.* at 651, 92 *S.Ct.* at 1212, 31 *L.Ed.*2d at 558) (citations omitted).]

Specifically, "[t]he right of a natural parent to its child must be included with the bundle of rights associated with marriage, establishing a home and rearing children." *In re Adoption of Children by N.M.,* 96 *N.J.Super.* 415, 424 n. 5, 233 *A.*2d 188 (App.Div.1967).

In *Pasqua v. Council,* 186 *N.J.* 127, 892 *A.*2d 663 (2006), we recently recognized that the due process guarantee of Article I, paragraph 1 of the New Jersey Constitution serves as a bulwark against the loss of parental rights without counsel being afforded. *Id.* at 147 n. 5, 892 *A.*2d 663 (citing *Crist v. N.J. Div. of Youth & Family Servs.,* 135 *N.J.Super.* 573, 575, 343 *A.*2d 815 (App.Div.

1975) (explaining that courts "should assign counsel without cost to indigent parents who are subjected to proceedings which may result in either temporary loss of custody or permanent termination of their parental rights")); *see also Rodriguez v. Rosenblatt*, 58 *N.J.* 281, 295, 277 *A.*2d 216 (1971) (requiring counsel where "consequence of magnitude" at issue).

■ Indeed, the need for counsel in a parental termination case is evident in light of the nature of the right involved; the permanency of the threatened loss; the State's interest in exercising its *parens patriae* jurisdiction only where necessary; and the potential for error in a proceeding in which the interests of an indigent parent, unskilled in the law, are pitted against the resources of the State.

■ In furtherance of that notion, the Legislature has enacted *N.J.S.A.* 30:4C-15.4(a) that provides:

In any action concerning the termination of parental rights filed pursuant to [*N.J.S.A.* 30:4C-15], the court shall provide the respondent parent with notice of the right to retain and consult with legal counsel. If the parent appears before the court, is indigent and requests counsel, the court shall appoint the Office of the Public Defender to represent the parent. The Office of the Public Defender shall appoint counsel to represent the parent in accordance with subsection c. of this section.

If the parent was previously represented by counsel from the Office of the Public Defender in a child abuse or neglect action filed pursuant to chapter 6 of Title 9 of the Revised Statutes on behalf of the same child, the same counsel, to the extent practicable, shall continue to represent the parent in the termination of parental rights action, unless that counsel seeks to be relieved by the court upon application for substitution of counsel or other just cause.

Nothing in this section shall be construed to preclude the parent from retaining private counsel.

In short, the right to counsel in a termination case has constitutional as well as statutory bases. Either way, the performance of that counsel must be effective. *See, e.g., V.F. v. State*, 666 *P.*2d 42, 45 (Alaska 1983) (holding because right to counsel is constitutionally guaranteed in parental termination proceeding, effective assistance of counsel is also constitutionally required); *In re Trowbridge*, 155 *Mich.App.* 785, 401 *N.W.*2d 65, 66 (1986) (explaining axiom that constitutional right to counsel includes right to

competent counsel); *see also In re M.S.,* 115 *S.W.*3d 534, 544 (Tex.2003) (finding statutory right to counsel in parental-rights termination cases embodies right to effective counsel); *State ex rel. E.H.,* 880 *P.*2d 11, 13 (Utah Ct.App.1994) (holding statute implicitly guaranteed appointed counsel for parents in termination proceedings be effective).

## III.

■ We turn then to remedy. The ordinary remedy for deficient performance by counsel, a malpractice action for money damages, has no resonance where the termination of parental rights is involved. Indeed, a termination proceeding is unique because personal liberty is at stake; money cannot substitute for the loss and can never make the parent whole. Accordingly, we look across disciplines to the criminal law, where another form of personal liberty is at stake, for a model to assess and remedy an ineffective assistance claim.

DYFS urges that *Strickland* is the appropriate measure. *Strickland, supra,* sets forth a two-part test for establishing ineffectiveness of counsel: (1) counsel's performance must be objectively deficient—i.e., it must fall outside the broad range of professionally acceptable performance; and (2) counsel's deficient performance must prejudice the defense—i.e., there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 *U.S.* at 694, 104 *S.Ct.* at 2068, 80 *L.Ed.*2d at 697; *accord State v. Fritz,* 105 *N.J.* 42, 58, 519 *A.*2d 336 (1987) (adopting *Strickland* standard in New Jersey).

In *Strickland, supra,* the United States Supreme Court explained that in addition to being "highly deferential," "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound

trial strategy.'" 466 *U.S.* at 689, 104 *S.Ct.* at 2065, 80 *L.Ed.*2d at 695. Further, that standard:

> relies [ ] on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the [Sixth] Amendment envisions. The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.
>
> [*Id.* at 688, 104 *S.Ct.* at 2065, 80 *L.Ed.*2d at 693–94.]

B.R. counters that *Strickland* is inadequate in a termination case because it "does not go far enough to protect the liberty interest of individuals, who ... stand to forever lose their fundamental right to parent their children." *In re A.S.,* 320 *Mont.* 268, 87 *P.*3d 408, 413 (2004). She instead points to the standard employed by the Oregon Supreme Court in *State ex rel. Juvenile Dep't v. Geist,* 310 *Or.* 176, 796 *P.*2d 1193, 1203 (1990), which rejects the "more stringent" *Strickland* standard and looks to determine if the termination proceeding was "fundamentally fair." Both *Strickland* and *Geist* look first to the performance of counsel. However, they articulate the prejudice prong slightly differently. *Strickland, supra,* describes it as requiring a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 *U.S.* at 694, 104 *S.Ct.* at 2068, 80 *L.Ed.*2d at 698. Under *Geist, supra,* the attorney's performance must deny the parent a fair trial and be sufficiently poor to place the decision "in to serious question." 796 *P.*2d at 1204.

We see little practical difference between the standards, *see L.W. v. Dep't of Children & Families,* 812 *So.*2d 551, 556 (Fla.Dist. Ct.App.2002) (explaining "[i]t is not clear to us how these civil standards of ineffective assistance of counsel [employed in Oregon, Washington, and Missouri] differ in practice from the criminal standard announced in *Strickland* "), *overruled on other grounds, S.B. v. Dep't of Children and Families,* 851 *So.*2d 689 (Fla.2003). Although *Geist* may be slightly more flexible than *Strickland,* the distinction is, to us, inconsequential. Given the parallels between the two standards and the fact that *Strickland* is clear, familiar to

lawyers and judges, and carries with it a developed body of case law, we adopt that as the standard in parental termination cases.

We note that in doing so, we follow the majority of other state courts that have addressed the issue of ineffective assistance of counsel in a termination of parental rights setting. As we do here, nearly all have employed the *Strickland* standard. *See, e.g., Jones v. Ark. Dep't of Human Servs.*, 361 *Ark.* 164, 205 *S.W.3d* 778 (2005); *L.W., supra*, 812 *So.2d* at 556 (citing *People in Interest of V.M.R.*, 768 *P.2d* 1268, 1270 (Colo.Ct.App.1989); *State v. Anonymous*, 179 *Conn.* 155, 425 *A.2d* 939, 942–43 (1979); *In the Interest of A.H.P.*, 232 *Ga.App.* 330, 500 *S.E.2d* 418, 421–22 (1998); *In re R.G.*, 165 *Ill.App.*3d 112, 116 *Ill.Dec.* 69, 518 *N.E.2d* 691, 700–01 (1988); *In re J.T.*, 740 *N.E.2d* 1261, 1265 (Ind.Ct.App.2000), *transfer denied*, 753 *N.E.2d* 18 (Ind.2001); *In re J.P.B.*, 419 *N.W.2d* 387, 390 (Iowa 1988); *In re Rushing*, 9 *Kan.App.2d* 541, 684 *P.2d* 445, 449–50 (1984); *In re Stephen*, 401 *Mass.* 144, 514 *N.E.2d* 1087, 1091 (1987); *In re Trowbridge, supra*, 401 *N.W.2d* at 66; *In re Bishop*, 92 *N.C.App.* 662, 375 *S.E.2d* 676, 678–79 (1989); *In re K.L.C.*, 12 *P.*3d 478, 480–81 (Okla.Civ.App.2000); *E.H., supra*, 880 *P.2d* at 13; *In re M.D.*, 168 *Wis.*2d 995, 485 *N.W.2d* 52, 55 (1992)).

## IV.

The knottiest issue presented is the practical application of a post-trial remedy, given the time constraints that apply in a parental termination case because of a child's need for permanency.

There are two basic paradigms for raising the issue: direct appeal and post-judgment motion in the trial court. The vast majority of states utilize the first route. *See, e.g., In re A.L.E.*, 248 *Ga.App.* 213, 546 *S.E.2d* 319, 325 (2001) (allowing ineffectiveness claims to be raised on direct appeal but remanding for evidentiary hearing upon determining record inadequate); *In re C.N.W.*, 26 *S.W.3d* 386, 393 (Mo.Ct.App.2000) (holding claims must be raised on direct appeal or waived); *Geist, supra*, 796 *P.2d* at

1201 (instructing cases to be heard on direct appeal because of need for finality and because protracted litigation is not in interest of child, natural parents, or prospective adopting parents); *In re Adoption of T.M.F.*, 392 *Pa.Super.* 598, 573 *A.*2d 1035, 1043 (1990) (finding direct appeal appropriate because expeditious); *People ex rel. V.A.E.Y.H.D.*, 199 *Colo.* 148, 605 *P.*2d 916, 919 (1980) (considering claim of ineffective assistance of counsel in parental termination case on direct appeal).[2]

■ Underlying the choice of direct appeal as a vehicle for determining an ineffectiveness claim is the notion

that, in most cases, it will consume the least amount of time. This is particularly important because of the need to stabilize the circumstances of the child. The longer there is uncertainty about whether a termination order will withstand appeal, the longer the child remains in limbo. The longer the child remains in limbo, the greater the possibility of emotional damage to the child; and the longer the child remains in the foster care system, the greater the financial burden upon the state. Furthermore, the longer the uncertainty about the finality of the termination order, the less likely it is that prospective adopting parents will come forward. From the parents' standpoint, the longer an erroneous termination order remains in effect, the more detrimental it is to them and their relationship with the child. This is because, in all likelihood, once the termination order is entered, the parents are not permitted to have contact with the child and the services that they may have been receiving previously from the state agency will have been terminated.

A direct appeal is likely to be faster than either a post-judgment motion or a habeas proceeding in most cases. The direct appeal has the time limits imposed by the statutes and rules governing appeals, and the majority of states have enacted expedited procedures for appeals of termination orders.

[Susan Calkins, *Ineffective Assistance of Counsel in Parental–Rights Termination Cases: The Challenge for Appellate Courts*, 6 *J.App. Prac. & Process* 179, 207 (2004); *see also Geist, supra,* 796 *P.*2d at 1200–01.]

---

[2] Some states have held that the proper remedy is a post-trial proceeding before the trial judge. *See, e.g., In re E.D. v. State Dep't of Human Res.*, 777 *So.*2d 113, 116 (Ala.2000) (finding motion to set aside judgment "appropriate" method for raising ineffectiveness claim); *L.W., supra,* 812 *So.*2d at 557 (opting for habeas action and rejecting direct appeal on grounds appellate attorney is often trial attorney and that record is usually insufficient); *In re B.P.*, No. 02–0422, 2002 *WL* 1842966 * 2 (Iowa App. Aug.14, 2002) (holding ineffectiveness cannot be raised for first time on appeal).

Although arguments can be made for other modalities, *see* Calkins, *supra,* 6 *J.App. Prac. & Process* at 203–06, the preference for direct appeal is persuasive to us. Accordingly, we direct that claims of ineffective assistance of counsel in termination cases be raised on direct appeal.

■ As a practical matter, the appeal must be filed by an attorney other than trial counsel. Further, appellate counsel must provide a detailed exposition of how the trial lawyer fell short and a statement regarding why the result would have been different had the lawyer's performance not been deficient. That will include the requirement of an evidentiary proffer in appropriate cases. For example, if the failure to produce expert or lay witnesses is claimed, appellant will be required to supply certifications from such witnesses regarding the substance of the omitted evidence along with arguments regarding its relevance.

■ In many cases, the issue will be resolvable on the appeal record alone. For example, if the panel accepts as true appellant's representations regarding the lawyer's shortcomings but determines, on the basis of the full record, that the outcome would not have changed, that will be the end of it. However, in some cases, a genuine issue of fact may require resolution. In such instances, the panel should, in advance of rendering a full opinion, remand the case to the trial judge for an accelerated hearing (to be completed in no more than fourteen days) followed promptly by an oral decision on the record. The parties should then be permitted simultaneously to exchange supplemental appellate briefs within seven days. Thereafter, the Appellate Division should render an opinion on all issues, including the effectiveness of counsel, as expeditiously as possible.

We anticipate that, with the benefit of experience, there may be a need for modification of the scheme. In the interim, we are satisfied that approaching the issue of effective assistance of counsel during the direct appeal process (which the Appellate Division has already accelerated in consideration of the time constraints that permanency hearings require) is the most timely

and efficient method for resolving that important issue. We refer the matter to the Committee on Family Practice for recommendations on the codification of the scheme we have set forth here.

V.

■ We turn finally to B.R.'s claim that she was not adequately represented below. We have carefully reviewed this record in light of that contention and conclude that it is legally unavailing. We are satisfied, as was the Appellate Division, that the representation B.R. received, although perhaps not a model, was not ineffective and further that the evidence amply supported the trial judge's conclusions.

VI.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.