# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3011-24

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

C.O.,

     Defendant,

and

H.G.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF I.G.,
a minor.

_____

Submitted February 24, 2026 – Decided May 21, 2026

Before Judges Susswein and Chase.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0038-25.

Jennifer N. Sellitti, Public Defender, attorney for appellant (John A. Albright, Assistant Deputy Public Defender, of counsel and on the briefs).

Jennifer Davenport, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Lakshmi R. Barot, Deputy Attorney General, on the briefs).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Neha Gogate, Assistant Deputy Public Defender, of counsel and on the briefs).

PER CURIAM

Defendant H.G.[1] appeals the May 7, 2025, Family Part order terminating his parental rights to his daughter, I.G.[2] The trial court found that the Division of Child Protection and Permanency (Division) proved all four prongs of the statutory best-interests-of-the-child test by clear and convincing evidence. Defendant contends that the trial court erred by completing the guardianship

---

[1] We use initials to protect the confidentiality of these proceedings. R. 1:38(3)(d).

[2] The child's mother, C.O., does not appeal from the termination of her parental rights.

trial in his absence and constructively denied him effective assistance of counsel by refusing an adjournment request. Defendant also argues that the trial court's findings regarding the best interests test were unsupported by expert testimony or other substantial credible evidence in the record. After reviewing the record in light of the governing legal principles, we affirm.

I.

We discern the following pertinent facts and procedural history from the record. The Division first became involved in I.G.'s life in March 2020, when it received a referral from hospital staff that she had been born exposed to cocaine and heroin and was suffering withdrawal symptoms. In April 2020, the Division filed a complaint for custody. I.G. was initially placed in the care of a relative and then a resource parent, K.M. C.O., the child's mother, and defendant engaged in substance abuse treatment, and in December 2021, I.G. was reunified with C.O. (legal and physical custody) and defendant (legal custody, supervised visitation).

On June 27, 2022, the Division again became involved with the family when C.O. relapsed, leaving I.G. with defendant. On July 13, 2022, the Division filed a complaint and order to show cause seeking to place I.G. under its care and supervision and to transfer physical custody to defendant, restricting C.O.'s

contact with I.G. to supervised visitation. Resource parent K.M. assisted defendant by caring for I.G. several days a week.

In January 2023, defendant was diagnosed with alcohol, opioid, and cocaine use disorders. He refused the recommended outpatient treatment but later engaged in unspecified services at the COPE[3] Center. After defendant tested positive for fentanyl at the COPE Center on March 14, 2023, the Division implemented a Safety Protection Plan requiring K.M. or defendant's sister to supervise his contact with I.G. Defendant tested positive for fentanyl again on April 28, 2023, following a drug screen that revealed the fentanyl level in his system had doubled since the March drug screen. The COPE Center also reported that defendant was not compliant in attending substance abuse treatment, failing to show up for many of his appointments. A new allegation of neglect was added to the Division's open investigation due to defendant's testing positive for fentanyl on the April 28 drug screen.

On May 3, 2023, the trial court issued an order awarding the Division custody of I.G. and requiring defendant to comply with substance abuse treatment. Thereafter, defendant was repeatedly ordered by the court to comply

---

[3] COPE refers to Oaks Integrated Care, a nonprofit organization that offers health and social service programs relating to addiction and mental health issues throughout New Jersey.

A-3011-24

with substance abuse assessments and recommended treatment, which he failed to do.

In September 2023, I.G. was diagnosed with multiple developmental disorders and recommended for occupational, physical, and specialized speech therapies. She was classified as a "Preschool Child with a Disability" and attended an extended year school program in summer 2024. The Division found that I.G. was "well cared for" by K.M.

In spring 2024, defendant reported that he planned to put his possessions in storage to attend inpatient treatment beginning in April. However, by September he still had not entered inpatient treatment; nor was he engaged in any other substance abuse program.

I.G. remained in K.M.'s home with the court ordering liberal supervised visitation for the parents. Defendant only sporadically visited I.G. and would leave the visits he attended early. Defendant did not see I.G. at all in 2025.

The Division assessed six kinship resources as a placement for I.G., all of which declined to care for her. K.M. did "not wish to explore" kinship legal guardianship (KLG) because "the parents are not reliable" and she was concerned about them having "a role in making decisions about [I.G.]."

5

On November 13, 2024, the Division filed a complaint for guardianship. In December 2024, defendant was served with the guardianship complaint and a 5A application for public defender representation. Defendant refused to fill out the 5A form until he had spoken with his attorney. Defendant then fell out of contact with the Division. The Division repeatedly tried to contact him by phone, mail, and visits to his last known address. In late March 2025, Division workers were able to contact defendant who reported that he and C.O. were living "hotel to hotel."

The guardianship trial was held on May 7, 2025. At the beginning of the proceedings, defendant's attorney made an oral motion to adjourn the trial to arrange a "defense psychological evaluation," which she was unable to order earlier due to her official assignment pending completion of defendant's 5A form. The trial court denied the motion, noting that she had begun representing him over a year earlier in the FN litigation[4] and had continued to represent him provisionally in the guardianship matter until defendant completed his 5A application—which, as the court noted, the Division had attempted to secure from him multiple times. The court found that defendant had "plenty, plenty,

---

[4]  FN litigation refers to child protection cases initiated by the Division, identified by the FN docket code.

plenty of notice" about the trial date and ample opportunity to participate in preparation for trial. The court therefore denied the request, explaining that "if there is any issue about [defendant] not feeling prepared, it's of his own making."

At trial, the Division presented testimony from Division case worker Sean Bacon. Defendant was scheduled to appear virtually but was unable to successfully join the proceedings via the link provided. He was able to appear telephonically for a few minutes but was then disconnected from the proceedings. The trial court made several attempts to contact him but was unable to reach him and ultimately determined that he had voluntarily left the trial. Defendant's counsel objected to proceeding in his absence.

Bacon testified regarding efforts made by the Division to secure substance abuse treatment for defendant and C.O. Bacon further testified that defendant repeatedly claimed he was attending treatment, but that the Division could not verify his attendance when they contacted the programs that he claimed to be participating in. Bacon also stated that defendant never presented the Division with a plan to care for I.G.

Bacon testified that K.M. was a fully licensed resource parent committed to adoption who has consistently been a part of I.G.'s life. Bacon explained that

I.G. calls K.M. and her husband "mom and dad," that she is "a part of the family," and he "has never seen a resource family so committed."

The court rendered an oral decision terminating C.O. and defendant's parental rights to I.G. to free her for adoption. Applying the four prongs of the "best interests" test codified in N.J.S.A. 30:4C-15.1(a),[5] the trial court determined that the first prong was satisfied because the "parents' non-

---

[5] The four prongs are:

> (1) The child's health and development have been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his foster parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The division has made diligent efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a).]

compliance, failure to plan, and subsequent inability to safely care for their children constitutes a cognizable harm." The court, relying on Matter of Guardianship of K.L.F., 129 N.J. 32, 44 (1992), explained that "[t]he harm or risk of harm to the child may not be physical;" rather, "[a] parent's action or inaction that results in emotional harm, [or] psychological harm, suffices."

The court likewise found the second prong was satisfied because both parents were repeatedly referred to substance abuse treatment and failed to meaningfully participate. The court explained that while defendant did participate in substance abuse treatment at one point, he "doesn't stay with it." The court further noted that both parents lost contact with the Division for an extended period despite the Division's efforts to reach them.

As for the third prong, the court found that Division workers "have done everything and more than . . . humanly possible" to provide the parents with treatment and offer them the opportunity to visit with I.G.

Finally, the court found the fourth prong was satisfied considering that I.G. has lived "the vast majority of her life with her current resource parents." The court further noted that I.G. is well cared for and "thriving in the resource parent[s'] home." The court explained that neither defendant nor C.O. "is or will become fit in the foreseeable future due to their longstanding substance abuse

9

issues," emphasizing that no testimony was presented at trial to suggest that defendant had received approval for stable housing or was actually engaged in drug treatment. The trial court emphasized that I.G. is entitled to a permanent relationship, and "her inability to get a permanent relationship because of the [parents'] conduct" was not something that the court could allow to continue.

This appeal followed. On February 24, 2026, we remanded for the limited purpose of having the trial court make findings of fact and conclusions of law regarding the reasons for defendant's absence from the guardianship trial and to determine whether defendant voluntarily absented himself from the trial. The trial court convened a hearing at which defendant testified. The trial court thereafter issued a written opinion concluding that defendant had voluntarily absented himself from the guardianship trial. We allowed the parties to submit supplemental briefing in response to the trial court's amplification.

Defendant raises the following contentions on appeal:

POINT I

THE DENIAL OF [DEFENDANT'S] ADJOURNMENT REQUEST DENIED HIM THE EFFECTIVE ASSISTANCE OF COUNSEL AND RESULTED IN A TWO-HOUR TRIAL IN WHICH HE WAS NOT PERMITTED TO DEFEND HIS FUNDAMENTAL CONSTITUTIONAL RIGHTS WITH EXPERT TESTIMONY.

POINT II

THE COURT'S PRONG ONE AND TWO CONCLUSIONS AS TO [DEFENDANT'S] FITNESS ARE INCORRECTLY PREMISED ON HIS INABILITY TO DEFEAT SUBSTANCE USE AND POVERTY, AND ARE UNSUPPORTED BY ANY EXPERT OPINION THAT HE ACTUALLY LACKS THE CAPACITY TO SAFELY PARENT.

POINT III

THE COURT'S THIRD PRONG CONCLUSIONS WERE ERRONEOUS WARRANTING REVERSAL.

POINT IV

THE COURT'S FOURTH PRONG CONCLUSIONS ARE UNSUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE AND MUST BE REVERSED BECAUSE THIS WAS NOT THE RARE CASE IN WHICH EXPERT BONDING EVALUATIONS WERE UNNECESSARY.

II.

We begin our analysis by acknowledging the legal principles governing this appeal. "A reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by 'adequate, substantial and credible evidence' on the record." New Jersey Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). Appellate courts "accord deference to factfindings of the family court because it has the superior ability to gauge the

11

credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." New Jersey Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012).

To that end, "[r]eversal is warranted only when a mistake must have been made because the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

However, a reviewing court does not "accord the same deference to a trial judge's legal determinations." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017). "Rather, all legal issues are reviewed de novo." Ibid.

Turning to substantive legal principles, it is well-established that "[a] parent's right to enjoy a relationship with his or her child is constitutionally protected." In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). The State may terminate parental rights pursuant to its parens patriae responsibility to protect the welfare of children; however, this is a limited power, applying only in circumstances where the parent is unfit or the child has been harmed. In re Guardianship of J.C., 129 N.J. 1, 10 (1992). "Parental rights may not be

12

terminated by merely showing that the child would be better off with a prospective adoptive parent." New Jersey Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 109 (App. Div. 2004). On the other hand, children also have the right to a "permanent, safe, and stable placement." Id. at 111.

In balancing these competing interests, courts apply the "best interests of the child" test, codified in N.J.S.A. 30:4C-15.1(a). See note 5. Considering the fundamental interest at stake, the Division has the burden of proof by clear and convincing evidence. C.S., 367 N.J. Super. at 111. "Clear and convincing evidence is that which produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established" and enables the trier of fact "to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." In re Samay, 166 N.J. 25, 30 (2001) (alteration in original) (internal quotation marks and citations omitted). "Presumptions of parental unfitness may not be used in proceedings challenging parental rights, and all doubts must be resolved against termination of [such] rights." New Jersey Div. of Child Protection and Permanency v. D.H., 469 N.J. Super. 107, 115 (App. Div. 2021) (alteration in original) (quoting K.H.O., 161 N.J. at 347).

III.

We first address whether the guardianship trial was properly conducted in defendant's absence. As we have noted, we remanded for the trial court to make findings of fact and conclusions of law regarding the reasons for defendant's absence from the guardianship trial and for the court to determine whether defendant voluntarily absented himself from the trial. Pursuant to our instructions, the trial court convened a hearing at which testimony was presented, and issued a thorough remand opinion including detailed findings.

Specifically, the court explained:

> On the day of trial, [defendant] appeared telephonically at the outset of the hearing, was sworn, and indicated his intent to contest the termination of his parental rights. The transcript reflects that [defendant] had access to at least two phones, as his attorney stated on the record that he was "having trouble getting in," and that she was "sending the link to another phone number" at his request. The defendant was present for his attorney's request that the trial be adjourned because she had only been assigned the case a few days before. The motion was denied.

> Shortly after the commencement of the Division's case-in-chief, [defendant's] connection to the hearing was lost. The court, counsel, and Mr. Bacon made multiple attempts to contact him, including calling both phone numbers, sending text messages, and leaving voicemails. [Defendant] had appeared over the past four years without any apparent difficulty using remote technology, and he was familiar with the procedure for

14

joining virtual hearings on the several matters that were pending before the court. Despite these efforts, [defendant] did not respond, did not attempt to reconnect, and did not provide any explanation for his absence. The court eventually considered the circumstances of [defendant's] departure from the proceedings, determined that he had voluntarily absented therefrom and continued the trial to conclusion. The court set forth its reasons at the time of its ruling and then expanded its reasons at the time it rendered its opinion, terminating the defendant's rights. Even though the defendant and his trial counsel continued to appear before the court with active cases through the current court docket the defendant has never raised an objection, filed a motion or offered an explanation for his absence from the remainder of the trial.

Upon the limited remand this court scheduled hearings on the following dates[:] February 25, March 20, March 25, April 1 and April 14. [Defendant] was unable to participate for a variety of reasons until April 14th. After argument the court rendered an opinion on March 20th. Thereafter, an extension of the remand was granted, and [defendant] appeared and was able to participate on April 14th.

The defendant appeared telephonically at a hearing on April 14, 2026. Counsel for the defendant represented that her client wished to testify in order to explain the circumstances surrounding his absence on the day of trial. All counsel consented to the defendant providing testimony.

[Defendant] stated that he had only a vague recollection of the trial proceedings but requested the opportunity to explain his conduct. He testified that, on the day of trial, he had recently begun a methadone

15

treatment program and had not yet acclimated to the prescribed dosage, which left him feeling "kinda groggy." He indicated that he did not recall precisely how he became disconnected from the proceeding. Upon attempting to investigate, he discovered that his phone had lost power. He further asserted that, although he attempted to reconnect, his phone would neither charge nor permit him to rejoin the proceeding. He maintained that he was not in a proper state of mind due to the effects of methadone at that time but is now in a clearer condition and seeks the opportunity to defend himself.

With respect to the care of his daughter, [defendant] acknowledged that he is presently unable to assume custody or otherwise care for her. He testified that he has been hospitalized for approximately four months and is in need of open-heart surgery. He further indicated that he is living in "one room, barely," and lacks the physical and mental capacity to care for his daughter. He expressed that, although he would like to be involved in her life, he recognizes his current inability to do so.

Throughout his testimony, [defendant] appeared highly emotional and, at times, broke down in tears. His demeanor fluctuated between expressions of regret regarding his history of addiction and assertive denials that he voluntarily absented himself from the proceeding.

The Court finds that [defendant] was not a credible witness. It was difficult to assess the veracity of his account, as he frequently avoided direct responses to specific questions, instead diverting into discussions regarding the details of his methadone treatment, including dosage levels both at the time of trial and currently. At one point, he suggested that his

16

dosage on the day of trial was so high that he was unable to function; however, he also stated that, the following week, he informed his counselor that the dosage was appropriate and further indicated that he remains on that same dosage at present.

His assertion that his phone lost power and that he made diligent efforts to reconnect, unsuccessfully due to the phone's inability to charge, was undermined by his subsequent admission that he may have fallen asleep during the proceeding, which could have accounted for his failure to reconnect.

When questioned as to why he did not ensure his phone was charged in advance of such an important proceeding, he responded simply, "stupidity." At times, he became frustrated when asked specific questions intended to test the accuracy of his account, stating that he could not defend his past actions and could only address future conduct. At other times, he attributed his circumstances broadly to his addiction.

The Court finds his version of events difficult to credit for several reasons. Certain aspects of his testimony are inconsistent with the trial record. For example, a review of the trial transcript (pages 10 through 12) reflects that, during efforts to connect the defendant to the proceeding via Zoom, his counsel advised that he was having difficulty receiving the link and had provided an alternate phone number for connection. This indicates that he had access to more than one phone on the day of trial. Even if one device failed, he could have used another to contact his attorney, the [c]ourt, or the Division, or could have sought assistance from another individual to communicate his intent to participate.

17

Additionally, the transcript reflects that, on the morning of trial, [defendant] informed the [c]ourt that he had entered a residential treatment program since his last court appearance. This appears inconsistent with his claim that he had been on methadone for over a month prior to trial and that his dosage had not yet stabilized. He also testified on April 14 that he was residing in a shelter on the day of trial.

His claim that he attempted to reconnect to the Zoom proceeding after his phone was charged but was unable to do so because the session had ended is likewise inconsistent with the record. Earlier that day, arrangements had been made to call him into the proceeding because he was unable to access a functioning Zoom link. It is therefore unclear how he would have later attempted to access the Zoom session in a manner that allowed him to determine it had concluded.

The credibility of his account is further undermined by common sense considerations. [Defendant] testified that he was residing in a shelter with other individuals present, including a roommate and administrative staff. Under such circumstances, it would have been reasonably feasible for him to obtain assistance or access alternative means of communication to notify the Court of his inability to continue participating.

Moreover, the trial transcript indicates that, on the morning of trial, [defendant] was in telephone contact with his attorney, the Division, and the [c]ourt. At no point did he indicate that he was unwell, impaired, or otherwise unable to participate. On the contrary, the record reflects no apparent impairment that would have prevented his participation.

As previously noted by the [c]ourt, the conclusion that [defendant] voluntarily absented himself from the proceedings is further supported by the fact that neither he nor his counsel raised this issue at any time during the nearly one-year period following the trial in May 2025. It would be reasonable to expect that, if a legitimate excuse existed, a prompt application would have been made to explain his absence, particularly given that he has continued to appear before this [c]ourt on other matters while represented by the same counsel.

The shifting explanations regarding his disconnection and failure to reconnect, the inconsistencies between his testimony and the trial record, and the application of common sense render his account unpersuasive and not credible.

The court added:

Based on these facts, the court finds that [defendant's] absence from the remainder of the trial was voluntary. The court further finds that the procedures employed, notice, opportunity to be heard, representation by counsel, and repeated efforts to facilitate participation, were appropriate and adequate to protect his due process rights under the circumstances. See [Division of Youth & Family Servs. v. M.Y.J.P., 360 N.J. Super. 426, 467-68 (App. Div. 2003); New Jersey Div. of Child Protection and Permanency v. K.S., 445 N.J. Super. 384, 391-93 (App. Div. 2016).]

The court concluded:

For the foregoing reasons, the court finds that defendant . . . voluntarily absented himself from the May 7, 2025, guardianship trial after appearing for a

19

short period of time. The court further finds that the procedures employed satisfies the requirements of due process, and that the child's right to permanency justifies proceeding in the parent's absence. The record supports the conclusion that the trial was conducted in accordance with law, and that the entry of judgment terminating parental rights was proper.

To determine whether a parent was afforded adequate procedural due process, courts apply the balancing test articulated by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976). K.S., 445 N.J. Super. at 390-391. Under the Mathews test, the court must consider the following factors:

> (1) the private interest that will be affected by the official action;
>
> (2) the risk that there will be an erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and
>
> (3) the governmental interest involved, including the added fiscal and administrative burdens that additional or substitute procedures would require.
>
> [K.S., 445 N.J. Super. at 391 (quoting Mathews, 424 U.S. at 334-35).]

Regarding the first Mathews factor, "a parent's private interest in maintaining some relationship with his or her children is 'far more precious than any property right.'" Ibid. (quoting In re Adoption of J.E.V., 442 N.J. Super.

472, 481 (App. Div. 2015)). See also New Jersey Div. of Child Prot. & Permanency v. R.L.M., 450 N.J. Super. 131, 144 (App. Div. 2017) ("The nature of the right involved is momentous; it is the parent's fundamental right to raise one's child.").

With respect to the second factor, because the termination of parental rights is evaluated on an individual basis, "a complete record is constitutionally necessary and a parent must be liberally afforded the right to be heard before executing the severance of the parent-child relationship." K.S., 445 N.J. Super. at 392. When evaluating the third factor, courts have recognized that a delay created by allowing a parent to testify imposes "only a minimal burden" on the State's interest in reducing the cost and burden of the proceedings. Ibid.

Here, we are satisfied that the remand proceedings cured any deficiencies in the trial court's decision to continue the guardianship trial in defendant's absence over defense counsel's objections. We are satisfied that the trial court's thorough and detailed factual findings are supported by the record, and we agree with the trial court's conclusion, based on a credibility assessment, that defendant voluntarily absented himself from the guardianship trial. We note that by permitting defendant to testify at the remand hearing, the trial court afforded defendant the most "basic indicia of due process"—"a meaningful

21

opportunity to be heard." New Jersey Div. of Youth & Fam. Servs. v. A.R.G., 179 N.J. 264, 286 (2004).

IV.

We turn next to defendant's contention the court erred by refusing to grant defendant's attorney's request for an adjournment. Defense counsel requested an adjournment at the beginning of the termination proceedings because she was unable to procure a defense expert report, having only been assigned to the case days prior.

Appellate courts "review a trial court's denial of a request for an adjournment 'under an abuse of discretion standard.'" Escobar-Barrera v. Kissin, 464 N.J. Super. 224, 233 (App. Div. 2020) (quoting State ex rel. Comm'r of Transp. v. Shalom Money St., LLC, 432 N.J. Super. 1, 7 (App. Div. 2013)). See also State v. Kates, 216 N.J. 393, 396-397 (2014) (finding denial of continuance to allow defendant to retain counsel of choice was subject to abuse of discretion standard). "Whether there was an abuse of discretion depends on the amount of prejudice suffered by the aggrieved party." Escobar-Barrera, 464 N.J. Super. at 233. "Thus, refusal to grant an adjournment will not lead to reversal 'unless an injustice has been done.'" Ibid. (quoting Nadel v. Bergamo, 160 N.J. Super. 213, 218 (App. Div. 1978)).

We find guidance and instruction in State v. Hayes, 205 N.J. 522 (2011). There, our Supreme Court held that reviewing courts should consider the following factors when considering a request for an adjournment:

> [T]he length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.
>
> [Hayes, 205 N.J. at 538 (quoting United States v. Burton, 584 F.2d 485, 490-91 (D.C. Cir. 1978)).]

The Hayes factors apply when a defendant has been denied effective assistance of counsel, or the counsel of their choosing. See, e.g., State v. Miller, 216 N.J. 40, 68 (2013) (Applying the Hayes factors to determine whether the trial court's denial of defendant's motion for adjournment denied him effective assistance of counsel). That brings us to defendant's contention that by denying counsel's request for an adjournment to obtain a defense expert report, the trial

23

court deprived him of effective assistance of counsel and precluded him from defending his fundamental parenting rights. Specifically, defendant argues that when counsel was formally assigned to the case just days before trial and was precluded from presenting any expert opinion or testimony to aid in his defense, defendant was constructively denied effective assistance of counsel.

"[T]he right to counsel in a termination case has constitutional as well as statutory bases." New Jersey Div. of Youth & Family Services v. B.R., 192 N.J. 301, 306 (2007). Our courts recognize that "the due process guarantee of Article I, paragraph 1 of the New Jersey Constitution serves as a bulwark against the loss of parental rights without counsel being afforded." Id. at 305. Additionally, pursuant to N.J.S.A. 30:4C-15.4, a parent involved in a termination of parental rights proceeding is entitled to legal representation. If the parent is indigent and requests counsel, the court must appoint the Office of the Public Defender to provide representation. "The performance of that counsel must be effective." B.R., 192 N.J. at 306.

To establish an ineffective assistance of counsel claim in a parental rights termination case, the proponent must meet the two-prong test established in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted in State v. Fritz, 105 N.J. 42, 58 (1987). B.R., 192 N.J. at 308-09. "First, the defendant

must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. Second, the defendant must show that counsel's "deficient performance prejudiced the defense." Ibid.

Regarding the first prong, counsel's performance is held to a standard of "reasonableness under prevailing professional norms;" thus, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. As for the second prong, defendant "must establish that he was prejudiced by showing that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" New Jersey Div. of Child Protection and Permanency v. P.D., 452 N.J. Super. 98, 116 (App. Div. 2017) (quoting Strickland, 466 U.S. at 694).

During summation, defense counsel argued that, in the absence of a doctor's report, the record was insufficient to show that I.G. would be irreparably harmed if separated from the resource parent and reunified with defendant. Defendant argues that "[u]nder these circumstances, when father and daughter had lived together during a substantial part of the litigation, it is unfathomable that counsel would not obtain an expert to demonstrate the bond that had formed between them."

We acknowledge that the submission of defense expert reports is a common practice in termination of parental rights cases. See New Jersey Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 146 (2018) ("In a termination of parental rights trial, the evidence often takes the form of expert opinion testimony by psychiatrists, psychologists, and other mental health professionals."); Kinsella v. Kinsella, 150 N.J. 276, 318 (1997) ("In implementing the 'best-interest-of-the-child' standard, courts rely heavily on the expertise of psychologists and other mental health professionals.").

But even assuming for the sake of argument that defense counsel's performance fell below the standard of "reasonableness under prevailing professional norms," Strickland, 466 U.S. at 688, defendant fails to establish that he was prejudiced by the absence of an expert report. Defendant, in other words, has not demonstrated that the outcome would have been different had he been given an opportunity to present a defense expert report relating to his bond with I.G. considering the substantial credible evidence in the record warranting termination of his parental rights. We emphasize that defendant has yet to present an expert report or the required certification from a proposed expert witness. Cf. B.R., 192 N.J. at 311 ("[I]f the failure to produce expert or lay witnesses is claimed, appellant will be required to supply certifications from

such witnesses regarding the substance of the omitted evidence along with arguments regarding its relevance."). The assertion that an expert report would have established a meaningful bond between defendant and I.G., therefore, is mere speculation.

We add that the trial court relied heavily on prongs one through three of the "best interests of the child" test, N.J.S.A. 30:4C-15.1(a), citing to substantial credible evidence in the record militating in favor of terminating parental rights including the parents' well-documented substance abuse issues, failure to provide a stable home, and failure to engage in substance abuse treatment despite the Division's diligent efforts. We presume the hypothesized report would be relevant to prong four analysis, that is, whether the termination of parental rights would do more harm than good. Accordingly, even if the hypothetical expert report opined in favor of defendant's position, it would not rebut most of the trial court's findings relating to the best interests of the child. Because it is unlikely that introduction of any such report would have altered the outcome, defendant has not established the prejudice necessary to satisfy prong two of the Strickland/Fritz test. Nor are we persuaded by defendant's related contention that he was denied due process because he was precluded from obtaining an expert report. We reiterate that by allowing defendant to

27

testify at the remand hearing, the trial court afforded defendant the most "basic indicia of due process"—"a meaningful opportunity to be heard."  A.R.G., 179 N.J. at 286.

In sum, we are not convinced that the trial court abused its discretion in denying defendant's request for an adjournment relating to acquiring an expert report, because defendant was not prejudiced by that decision.  See Escobar-Barrera, 464 N.J. Super. at 233 ("[R]efusal to grant an adjournment will not lead to reversal 'unless an injustice has been done.'" (quoting Bergamo, 160 N.J. Super. at 218)).

## V.

We next consider defendant's contention that the court erred in applying the best interests test.  Specifically, defendant argues that the trial court impermissibly relied on defendant's temporary homelessness and his relapse into substance abuse as a basis for terminating his parental rights under prongs one and two.  Defendant also maintains that the trial court's conclusions relating to the third prong were erroneous because the record does not contain substantial credible evidence that the Division made reasonable efforts for reunification or appropriately considered alternatives to termination.  Finally, defendant argues that the trial court's fourth prong conclusions are unsupported by the record

because there was no bonding evaluation to determine whether termination of defendant's parental rights would do more harm than good. We address these contentions in turn.

A.

Defendant contends that the trial court's conclusions relating to prongs one and two of the best interests test impermissibly relied on defendant's inability to participate in the termination proceedings and defendant's difficulties in defeating substance use and overcoming homelessness. Defendant argues that there was not sufficient credible evidence in the record to support the trial court's findings on these issues.

Under the first prong of the termination test, N.J.S.A. 30:4C-15.1(a)(1), the Division must prove by clear and convincing evidence that "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship." The second prong is satisfied when "[t]he parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2).

"In the absence of actual harm, a finding of abuse and neglect can be based on proof of imminent danger and substantial risk of harm." New Jersey Dep't

A-3011-24

of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 23 (2013) (citing N.J.S.A. 9:6-8.21(c)(4)(b)).  "A court 'need not wait to act until a child is actually irreparably impaired by parental inattention or neglect.'"  Ibid. (quoting In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999)).

"Addiction is not easy to successfully remediate; a failure to successfully defeat drug addiction does not automatically equate to child abuse or neglect." New Jersey Div. of Youth & Fam. Servs. v. V.T., 423 N.J. Super. 320, 331 (App. Div. 2011).  See also K.H.O., 161 N.J. at 349 ("Drug use during pregnancy, in and of itself, does not constitute a harm to the child under N.J.S.A. 30:4C-15.1(a)(1).").  However, a child may be harmed by parental incapacity and failure to provide a stable home arising from substance abuse.  See, e.g., New Jersey Div. of Youth & Fam. Servs. v. H.R., 431 N.J. Super. 212, 222 (App. Div. 2013) (explaining that "harm and risk of harm were proven because the parents' drug use resulted in their failure to provide a stable home, with appropriate nurture and care of the young child"); New Jersey Div. of Youth & Fam. Servs. v. T.S., 417 N.J. Super. 228, 245 (App. Div. 2010) ("[P]arents dabbling with addictive substances must accept the mandate to eliminate all substance abuse.  Such unabated behavior initiates the foster care placement of

their children and causes continuing harm by depriving their children of necessary stability and permanency.").

Poverty or lack of resources cannot be used to deem a parent unfit. See New Jersey Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 616 (1986) ("Parents are not to be adjudged unfit because they lack resources or intelligence, but only by reason of conduct detrimental to the physical or mental health of the child, specifically in the form of actual or imminent harm."). See also J.C., 129 N.J. at 21 ("Parents, particularly those with limited incomes and unstable housing and work experiences, should be able to turn to the foster-care system without fear of losing their children.").

On the other hand, "[c]hildren must not languish indefinitely in foster care while a birth parent attempts to correct the conditions that resulted in an out-of-home placement." New Jersey Div. of Youth & Fam. Servs. v. S.F., 392 N.J. Super. 201, 209 (App. Div. 2007) (citations omitted). See also C.S., 367 N.J. Super. at 111 ("The emphasis has shifted from protracted efforts for reunification with a birth parent to an expeditious, permanent placement to promote the child's well-being."). "[T]he attention and concern of a caring family is 'the most precious of all resources.'" DMH, 161 N.J. at 379 (quoting A.W., 103 N.J. at 613). "A parent's withdrawal of that solicitude, nurture, and

31

care for an extended period of time is in itself a harm that endangers the health and development of the child." Ibid.

We acknowledge that it was improper for the trial court to consider defendant's inability to participate in the termination proceedings as evidence of his unwillingness to do what is necessary for I.G.'s well-being and for reunification. However, the trial court's conclusions relating to prongs one and two were otherwise supported by substantial credible evidence in the record.

Concerning the first prong, the trial court explained, "The parents' non-compliance, failure to plan, and subsequent inability to safely care for their children constitutes a cognizable harm." The trial court highlighted the lack of stability in I.G.'s life, stating, "What's happening is this child has not had any permanency for the five years of her life." The court noted the Division's well-documented history of both parents' long-standing substance abuse issues. The trial court further found that defendant tested positive for cocaine and fentanyl while I.G. was in his sole custody. The court also recognized the harm to I.G. based on defendant's failure to visit her with regularity, including not visiting at all during 2025. The court also found that when defendant visited with I.G., he would often end his visits early.

The trial court further found that defendant and C.O. had been "moving from hotel to hotel," demonstrating "a lack of stability." The trial court concluded that defendant's "removal of the solicitude, and nurture, and family relationship that that child is entitled to have," represented a cognizable harm satisfying the first prong.

Relating to the second prong, the trial court found that during the full year of litigation, C.O. and defendant were repeatedly ordered by the court to comply with substance abuse assessments and recommended treatment, which they failed to do. The trial court recognized defendant's past efforts at rehabilitation but found "he doesn't stay with it." Failure to timely complete drug rehabilitation programs can satisfy the second prong. See, e.g., H.R., 431 N.J. Super. at 224 (finding the second prong satisfied because the parent "had not successfully completed any treatment, rehabilitation, or therapy program with any lasting positive effects"). The court also noted that defendant remained out of contact with the Division for a significant period despite the Division's efforts to contact him. All of these findings are supported by substantial credible evidence in the record.

Defendant further argues with respect to the first two prongs that the Division "did not offer any expert evidence or testimony to prove that

33

[defendant] could not overcome substance use, or that he was otherwise unable to adequately parent [I.G.]" We are unpersuaded. "The necessity of expert testimony is determined by the sound exercise of discretion by the trial judge." Maison v. N.J. Transit Corp., 460 N.J. Super. 222, 232 (App. Div. 2019). We see no error in the court's determination that expert testimony was not needed with respect to defendant's well-documented history of substance abuse. We add that it is commonly known that fentanyl is an extraordinarily dangerous substance, exposure to which can be fatal.

B.

Pursuant to the third prong of the "best interests" test, the Division must make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court [must have] considered alternatives to termination of parental rights." N.J.S.A. 30:4C-15.1(a)(3). Defendant argues that there is insufficient evidence in the record demonstrating that the Division made reasonable efforts to reunite defendant and I.G. Defendant also argues that the court erred in finding that KLG was appropriately considered as an alternative to termination because that finding was based solely on hearsay testimony from caseworker Bacon.

34

The record supports the trial court's conclusion that the Division made "diligent efforts to reunite the family," K.H.O., 161 N.J. at 354, and that the trial court "considered alternatives to termination of parental rights," N.J.S.A. 30:4C-15.1(a)(3). The trial court found that Division workers "have done everything and more than . . . humanly possible" to provide the parents with treatment and offer them visitation with I.G. This finding is supported by the Division's numerous referrals for defendant to attend substance use treatment and repeated offers of visitation. The Division's efforts were reasonable even though they "did not bear fruit." New Jersey Div. of Youth & Fam. Servs. v. A.G., 344 N.J. Super. 418, 442 (App. Div. 2001).

Likewise, the Division made reasonable efforts to pursue alternatives to the termination of parental rights. Bacon testified that he had explained the distinctions between KLG and adoption to K.M. and that she preferred adoption over KLG because she did not want I.G.'s parents to know where she lived based on their behaviors. Evidence that establishes a resource parent's clear and informed preference for adoption while knowing that KLG is available will support a finding that no reasonable alternatives to termination exist. See New Jersey Div. of Child Prot. & Permanency v. M.M., 459 N.J. Super. 246, 263 (App. Div. 2019) (determining that a "caregiver must be fully informed of the

potential benefits and burdens of KLG before deciding whether he or she wishes to adopt. Once he or she is provided with that comparative information, the caretaker's preference between the two alternatives should matter."). The trial court found the caseworker credible. Moreover, defense counsel did not raise any objections to Bacon's testimony. The law is well-settled that "[h]earsay subject to a well-founded objection is generally evidential if no objection is made." Id. at 276 (quoting N.J. Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 348-49 (App. Div. 2016)).

The record also shows that the Division assessed and ruled out multiple family members as alternatives for KLG. There was no suitable relative or adult willing to undertake the responsibility. Thus, the trial court's conclusion that the Division satisfied the third prong by clear and convincing evidence is supported by the record.

C.

Under the fourth prong of the "best interests" standard, the State must show by clear and convincing evidence that termination of parental rights "will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). The trial court may consider the bond formed with a resource parent under the fourth prong. See New Jersey Div. of Child Prot. & Permanency v. D.C.A., 256 N.J. 4, 28 (2023)

(concluding that the 2021 legislative amendment precludes a trial court from considering the child's bond with the resource family under the second prong, "but does not bar such evidence when the court addresses that standard's fourth prong").

We find guidance in our Supreme Court's decision in New Jersey Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88 (2008).  As the Court explained,

> When a parent has exposed a child to continuing harm through abuse or neglect and has been unable to remediate the danger to the child, and when the child has bonded with foster parents who have provided a nurturing and safe home, in those circumstances termination of parental rights likely will not do more harm than good.
>
> [Id. at 108.]

It bears emphasis in this regard that the trial court found that there was a great benefit to I.G. being adopted by the resource parent.  The trial court noted that I.G. has lived the vast majority of her life with the resource parent.  Regarding her bond with the resource family, Bacon testified that I.G. is "part of the family," calls her resource parents "mom and dad," and has a strong bond with the other two children in their home, whom she regards as her brothers.

Bacon also testified that I.G. receives occupational speech therapy and that K.M. has "taken the liberty of finding her own providers for developmental

specialists." He described K.M.'s advocacy for I.G. as "incredible" and relayed to the court that he has not seen "a resource family so committed" in quite some time. Bacon also testified that K.M. has made sure I.G. knows her biological family and has coordinated visits with grandparents, aunts, and uncles. He further testified that K.M. indicated a willingness to ensure that I.G. maintains contact with her birth family, including her parents. This testimony amply supports the trial court's findings with respect to the fourth prong.

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

_M.C. Harley_

Clerk of the Appellate Division

A-3011-24